[No. B236769. Second Dist., Div. Three. Dec. 5, 2012.]

In re DRAKE M., A Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
PAUL M., Defendant and Appellant.

■

---

## COUNSEL

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Acting County Counsel, James M. Owens, Assistant County Counsel, and Melinda S. White-Svec, Deputy County Counsel, for Plaintiff and Respondent.

---

## OPINION

**CROSKEY, J.**—Paul M. (father) appeals from a judgment declaring his child to be a dependent of the court based on the trial court's finding that father's usage of medical marijuana placed the child at substantial risk of serious physical harm or illness pursuant to Welfare and Institutions Code[1] section 300, subdivision (b),[2] and ordering him to randomly test for drugs and to participate in parenting courses and drug counseling.[3] He contends that the evidence was insufficient to support the trial court's finding. He also contends that the trial court's orders based on such finding constitute an abuse of discretion. Father seeks to reverse the judgment as to the jurisdictional finding against him and to vacate the orders based on such finding. We

---

[1] All section references are to the Welfare and Institutions Code unless otherwise noted.

[2] Section 300 states, in relevant part, "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."

[3] Although drug counseling was not mentioned by the trial court at the hearing, the October 5, 2011 minute order contained the following with respect to father, "Counseling at/with DCFS APPROV. FACILITY shall include: Parenting. Drug counseling. Random drug testing."

conclude that father is correct and, accordingly, we will reverse the judgment in part and reverse the orders as to him.

## FACTUAL AND PROCEDURAL BACKGROUND

The minor child at issue in this appeal is Drake M. (Drake) who was born in August of 2010. Drake came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) on May 10, 2011, by referral when he was only nine months old. The referral alleged that father and Lisa H. (mother)[4] used marijuana, that mother had a history of extensive drug abuse and of prior DCFS involvement with another child with whom she failed to reunify,[5] and that the reporting party was concerned for the safety and welfare of Drake.

Upon being interviewed on May 10, 2011, as part of DCFS's investigation of the allegations, mother acknowledged that father used marijuana for his arthritis but she did not know how often he used it. DCFS reported that she stated "that father and her [*sic*] never used marijuana in the presence of Drake," and that "Aundrea[6] watches Drake while they smoke marijuana in the garage." DCFS also reported that "mother denied any domestic violence between father and her." The DCFS social worker observed Drake and described him as "clean without marks or bruises." The social worker also reported that Drake "appeared to be reaching developmental milestones" and, with respect to his healthcare, that "mother stated the child Drake has been going to Kaiser in Downey." DCFS reported that, according to Kaiser, Drake was three months behind on his immunization schedule.

With respect to the home assessment, the social worker noted that the family lived in "a two-bedroom apartment with one bathroom," "a playpen in the living room" and "a crib in the parent's room." Mother explained to the social worker that "Drake sleeps in his crib and never sleeps in the bed with [the] parents." Aundrea slept in the second bedroom. There was plenty of food in the home and there were working utilities. The social worker also noted a poster of "various types of marijuana on the wall of the home" and that there was "beer in the refrigerator."

---

[4] Mother is not a party to this appeal. We have omitted most of the facts relating to mother's current drug use, history of drug abuse, current mental illness, history of mental illness, history of criminal conduct, and prior DCFS involvement with other children, as such facts are not relevant to father's appeal.

[5] In 2002, mother's child, Jonathan P., was removed from her care due to domestic violence between mother and Jonathan's father, Matt P.; physical abuse by both parents; and substance abuse issues of both parents. Mother failed to reunify with Jonathan, her parental rights were terminated, and he was adopted. The court terminated jurisdiction in that case in December of 2005. Neither Jonathan nor Matt is a party to this appeal.

[6] Aundrea M. is father's adult child and Drake's half sister.

Father was interviewed on May 11, 2011. He "stated that he uses marijuana three times a week for his arthritis and pain in his body." When asked who watched Drake while he and mother used marijuana, he stated that Aundrea watched Drake when she was home, that another relative watched Drake when Aundrea was not home, and that he and mother do not always use marijuana at the same time. He also stated, "None of us use drugs in front of our child." Father denied any personal history of previous DCFS involvement, mental illness or criminal activity. He also stated that he was willing to do whatever was necessary to prevent Drake's removal from his custody. Father agreed to take on-demand drug screens. He missed several tests due to his being uncomfortable urinating in front of another person. He tested positive for cannabinoids with respect to those tests he took. However, he tested negative for all other drugs. DCFS later described the family's strengths to include that Drake was healthy, that there was family support and that father was employed.

Mother agreed to a safety plan with DCFS under which Yolanda F., Drake's paternal grandmother, would ensure neither mother nor father were alone with Drake while under the influence of marijuana. However, paternal grandmother had to leave California due to an emergency in North Carolina and could no longer participate in the plan.

DCFS filed a petition on May 24, 2011. Count b-3, as amended, alleged that "The child Drake [M.'s] father, Paul [M.], is a current user of legal marijuana which on occasion's [*sic*] renders the father incapable of providing regular care and supervision of the child. The father's drug use endangers the child's physical health, safety and well being, creates a detrimental home environment and places the child at risk of physical harm, [*sic*] and damage." With respect to mother, the petition, as amended, included the following counts against her: "b-1 [¶] The child Drake [M.'s] mother, Lisa [H.] has a history of illicit drug use including amphetamine and marijuana which renders the mother periodically incapable of providing regular care and supervision of the child. On 05/10/2011 & 8-10-11, the mother had a positive toxicology screen for Cannabinoids. The child's sibling, Jonathan [P.] . . . received Permanent Placement services due to the mother's substance abuse. The mother's illicit drug use endangers the child and places the child at risk. . . . [¶] b-2 [¶] The child Drake [M.'s] mother, Lisa [H.] has a history of mental and emotional problems including a diagnosis of Bi-polar [*sic*] disorder which periodically render the mother unable to provide regular care for the child. The mother has occasionally failed to take the mother's psychotropic medication as prescribed. The child's sibling, Jonathan [P.] . . . received Permanent Placement services due to the mother's mental and emotional problems. The mother's mental and emotional problems endanger the child and place the child at risk."

At the detention hearing, the trial court found that DCFS had made a prima facie case for detaining Drake and vested placement and custody with DCFS. However, the trial court specified in its minute order that "THE DETENTION FINDINGS ARE MADE AGAINST THE MOTHER ONLY." The trial court stated, "The minor is going to be detained from the mother and placed with the father." The trial court (1) found that father was Drake's presumed father; (2) ordered mother to move out of the family home; (3) ordered reunification services for mother, including monitored visits, weekly random drug testing, substance abuse counseling and parenting courses; and (4) ordered family maintenance services for father including weekly random drug testing.

DCFS interviewed father again in June of 2011 with respect to his marijuana usage. Father stated "he tried marijuana in his 20's and then used the drug 'every now and then.' " He stated he had always used the drug to manage his pain and had obtained a medical marijuana recommendation in February of 2011, a copy of which is in the record. He stated he went to Kaiser for his knee pain and, after X-rays were taken, he was told "he has the knees of an old man." When he has to walk a long distance, the pain is such that he must use a cane. Although he received a referral for rehabilitation, he did not attend the program, took Motrin and sought a recommendation for medical marijuana. He stated he had been using marijuana three to four times a week but stopped mid-May of 2011.[7] Paternal grandmother stated that father "won't accept" mother's using marijuana and that "father does not use in front of her or Drake." Father's ex-wife, Gina M., also confirmed that father used marijuana recreationally when younger but now used it for arthritis in his hands and knees because of his work as a concrete mason. DCFS noted that father had been employed for many years and "appears capable of providing for the child Drake's basic needs." Father stated Drake was taken to see his doctor for his nine-month checkup and received immunizations.

The combined adjudication and disposition hearing was held on October 5, 2011. Father testified in his defense. He testified that he worked as a cement mason which required him to spend three hours each day on his knees. He also testified that he received pain medication for his knees from his doctor at Kaiser but that the pills did not work for him. He stated he was not satisfied with this course of treatment and sought out medical marijuana as an alternative.

When asked if he smoked marijuana inside his home, father replied, "No, ma'am, not at all" because "there's no smoking in my house." He stated that

---

[7] The drug screen results in the record include a "no-show" test from May 12, 2011. Although DCFS generally treats "no-shows" as positive tests, there is no evidence of any positive test result from May of 2011.

he only smokes in his detached garage and Drake is never present when he does so. The marijuana is kept in a locked tool box on a shelf in the garage, far out of Drake's reach. Father testified that he does not smoke marijuana daily, but about four or five times per week. He stated he smokes mostly at the beginning of the day or around lunchtime.

Father also testified that a minimum of four hours passes between when he smokes marijuana and when he sees Drake after work. He also testified that he is never alone with Drake when he smokes. When asked if he is ever feeling the effects of marijuana when he picks up Drake at daycare, he replied, "Not at all." In response to the hypothetical question, "What if you still were?" he stated, "I would leave him there longer or make arrangements . . . ." He also stated that the DCFS social worker was aware of his using marijuana, has been to his house numerous times, but has never seen him smoke it nor found any within the home as it is kept in the detached garage.

When asked whether he had been back to see Dr. Rose, the physician who recommended he use marijuana for his knee pain, father replied, "No. I just—the renewal is once a year. I have to go back there in a year." The court admonished father and stated, "You said if you use this cannabis therapeutically you're suppose [*sic*] to continue to have it monitored by this Dr. Rose." Father agreed to see Dr. Rose again for followup.

DCFS argued before the trial court that, based on father's testimony, he was under the influence of marijuana while caring for Drake. Counsel for DCFS stated on the record, "[h]e indicated that four or five times a week he uses marijuana. He then—eventually a number of hours later—goes and picks up the child, he's then home alone with the child. I think we quite well know that marijuana doesn't wear off in four hours. . . . *It's true I don't have evidence that he smokes in the same room as the minor* but that's not the primary issue. He is a regular caretaker for the child and is regularly under the influence of marijuana both legally, and . . . admitted [that] he cannot be driving with the child. He would be—he would be subject to sanctions should he be driving with the child. . . . This father regularly tests dirty for marijuana. The notion he's not under the influence is ridiculous. He's legally over any indication that is allowed on any sort of driving limit. *I think that the court can easily find that he's regularly under the influence while caring for his child.*" (Italics added.) DCFS provided no evidence, through expert testimony or otherwise, showing that four hours after smoking marijuana father was still under the influence of marijuana and was unable to operate a vehicle or care for a child.

The trial court found that the allegations against father in the petition, as amended, were true. It ordered Drake placed with father under DCFS

supervision. Mother was allowed to live in the home on the condition that she submit to weekly random drugs tests and the results of such tests were clean. She was also ordered to comply with her counseling programs and take all prescribed medication. Family reunification services were ordered for mother. Family maintenance services were ordered for father. Father was ordered to avoid being under the influence of marijuana while providing care for Drake. He was also ordered to submit to random drug testing and to attend parenting courses and drug counseling sessions. Father timely appealed.

## CONTENTIONS

Father contends that the evidence was insufficient to support the trial court's finding that his conduct, as alleged in count b-3, caused Drake to suffer, or to be at a substantial risk of suffering, serious physical harm or illness. He also contends that the trial court's orders based on such finding constitute an abuse of discretion. He seeks to reverse the judgment with respect to count b-3 and the orders based on such count.

## DISCUSSION

### 1. The Merits of Father's Appeal Should Be Addressed

DCFS pointed out in its opposition that should we reverse the judgment as to father, the unchallenged findings as to mother will continue to support dependency jurisdiction pursuant to section 300, subdivision (b). (See *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494].) In making this assertion, DCFS appears to argue that reaching the merits of father's appeal will have no practical impact on the dependency proceeding as a result because it is moot. We disagree.

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [90 Cal.Rptr.3d 44].) However, we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E., supra,* at p. 454); (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 [124 Cal.Rptr.3d 795]; see *In re I.A.* (2011) 201 Cal.App.4th 1484,

1494 [134 Cal.Rptr.3d 441]); or (3) "could have other consequences for [the appellant], beyond jurisdiction" (*In re I.A., supra,* at p. 1493 [not reaching the merits of an appeal where an alleged father "has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings"]).

Here, the outcome of this appeal is the difference between father's being an "offending" parent versus a "non-offending" parent. Such a distinction may have far-reaching implications with respect to future dependency proceedings in this case and father's parental rights. Thus, although dependency jurisdiction over Drake will remain in place because the findings based on mother's conduct are unchallenged, we will review father's appeal on the merits.

### 2. There Is No Substantial Evidence to Support the Trial Court's Jurisdictional Finding With Respect to Father

Father contends that the evidence was insufficient to support the trial court's finding that his conduct, as alleged in count b-3, caused Drake to suffer, or to be at a substantial risk of suffering, serious physical harm or illness. We agree.

"We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.] We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citation.] 'However, substantial evidence is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, "[w]hile substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding* [citations]." [Citation.] "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]' [Citation.]" (*In re David M.* (2005) 134 Cal.App.4th 822, 828 [36 Cal.Rptr.3d 411], italics omitted.)

Count b-3 in the petition alleged that jurisdiction was warranted because father, "a current user of legal marijuana," was incapable of providing regular care and proper supervision for Drake. Thus, to support the trial court's finding, DCFS must have produced evidence showing that, pursuant to section 300, subdivision (b), Drake has suffered, or there is a substantial risk that he will suffer, serious physical harm or illness, as a result of (1) father's inability to provide regular care for Drake due to father's substance abuse or (2) the failure or inability of father to adequately supervise or protect Drake. DCFS

concedes that Drake has not suffered serious physical harm or illness and thus the question is whether the evidence was sufficient to find there was a *substantial risk* that he will suffer serious physical harm or illness at the time of the jurisdictional hearing.

Without distinguishing between the two different types of negligent acts relevant in this case, DCFS contends that the trial court's findings were supported by substantial evidence in that Drake was at risk of serious physical harm because father "had not alleviated his drug abuse problems." In support of its contention, DCFS asserts that father (1) continued to test positive for marijuana on drug screens throughout the dependency proceedings; (2) admitted to smoking marijuana up to four or five times per week; and (3) picked up Drake from daycare and cared for him alone four hours after smoking marijuana.[8]

a. *There Was No Evidence Showing That Father Is a Substance Abuser*

■ DCFS failed to show that father was unable to provide regular care for Drake due to father's *substance abuse*. Both DCFS and the trial court apparently confused the meanings of the terms "substance use" and "substance abuse." The statute is clear, however, jurisdiction based on "the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse" must necessarily include a finding that the parent at issue is a substance *abuser*. (§ 300, subd. (b).) We have previously stated that without more, the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found. (See, e.g., *In re Alexis E., supra*, 171 Cal.App.4th at p. 453 ["[W]e have no quarrel with Father's assertion that his use of medical marijuana, *without more*, cannot support a jurisdiction finding that such use brings the minors within the jurisdiction of the dependency court, not any more than his use of the medications prescribed for him by his psychiatrist brings the children within the jurisdiction of the court"]; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 [148 Cal.Rptr.3d 800] ["It is undisputed that a parent's use of marijuana[, hard drugs, or alcohol] 'without more,' does not bring a minor within

---

[8] Citing *In re Alexis E.*, DCFS also asserted that prior to obtaining a medical marijuana recommendation, father used marijuana recreationally, which supports the conclusion that father had a history of substance abuse, which in turn is evidence of a risk of physical harm or illness to Drake. The trial court specifically amended the petition to exclude that father had a history of substance abuse stating to DCFS counsel, "You don't have any evidence of history. There's not a stitch of evidence before me, that's no. 1." Further, *In re Alexis E.* states that using marijuana illegally prior to obtaining a recommendation may support a finding of a history of substance abuse. (*In re Alexis E., supra*, 171 Cal.App.4th at p. 451.) It does not stand for the proposition that a history of substance abuse, alone, is sufficient to support dependency jurisdiction pursuant to section 300, subdivision (b).

the jurisdiction of the dependency court." (italics omitted)].) The question then arises, what constitutes substance abuse?

The Legislature included no definition of the term "substance abuse" when it rewrote section 300 in 1987. And a review of the legislative history surrounding the revisions has revealed no specific discussion of how such term should be defined in practice. Dependency cases have varied widely in the kinds of parental actions labeled "substance abuse." Thus, we find a workable definition is necessary to avoid any resulting inconsistencies.

Many cases, outside the dependency context, have relied on various definitions of psychiatric disorders found in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000) (DSM-IV-TR). But we have found only one published case within the dependency scheme that does so with respect to the term "substance abuse."[9] That case is *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322 [12 Cal.Rptr.3d 572].

Although *Jennifer A.* involved a different phase in the dependency process, it is instructive here. The mother in that case petitioned for a writ of mandate seeking relief from the lower court's order terminating her reunification services and setting a hearing under section 366.26 to evaluate whether her parental rights should be terminated. The children at issue "were not initially detained due to Mother's drug use, and the petition did not raise drug abuse as a ground for removing the children from [her] custody." (*Jennifer A. v. Superior Court, supra*, 117 Cal.App.4th at p. 1344.) The evidence in the record showed that the mother was employed and, since the case was opened, had received a promotion; that there was no evidence of physical or emotional abuse; that the children's living conditions were adequate; and, outside the one incident where the mother left the children unattended accidentally, that she acted appropriately and knew proper parenting behavior. (*Id.*, at pp. 1326–1327.) Regardless, "[t]he basis for the [lower] court's finding of detriment primarily was Mother's missed, diluted, and positive drug tests between the 12-month review report/hearing and the 18-month review report/hearing." (*Id.*, at p. 1346.)

The appellate court found that the record did not support the finding that the children would be at substantial risk of detriment if returned to that

---

[9] Another case, *In re David M., supra*, 134 Cal.App.4th 822, briefly refers to the DSM-IV-TR definition of "cannabis abuse" in a footnote. (134 Cal.App.4th at p. 826, fn. 1.) It does not rely on such definition in its holding nor does it analyze how "substance abuse" should be defined. Instead, the appellate court, with little discussion of the factual basis for such finding, "accept[ed] as true that mother continues to suffer from a substance abuse problem with marijuana in the limited respect shown on this appellate record." (*Id.*, at p. 830.) Therefore, it is of little use in our analysis here.

mother based on her *use* of marijuana. (*Jennifer A. v. Superior Court, supra,* 117 Cal.App.4th at p. 1346.) Additionally, there was no evidence "presented to establish Mother displayed clinical substance abuse, that is, '[a] maladaptive pattern of substance use leading to clinically significant impairment or distress . . . occurring within a 12-month period.' (Am. Psychiatric Assn., Diagnostic & Statistical Manual of Mental Disorders (4th ed. 2000) p. 199.) No medical professional diagnosed Mother as having a substance abuse problem, no medical professional testified at the 18-month review hearing, and there was no testimony of a clinical evaluation." (*Ibid.*) The court went on to state, " '[w]e have no clinical evaluation, no testing to indicate [substance abuse], just the opinion of the mother's social worker and a therapist.' [Citation.]" (*Ibid.*) Finding the evidence insufficient, it granted the writ petition. (*Id.,* at p. 1347.)

■ We find *Jennifer A. v. Superior Court* persuasive and hold that a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR. The full definition of "substance abuse" found in the DSM-IV-TR describes the condition as "[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights)." (DSM-IV-TR, p. 199.)

■ Although a finding of substance abuse is necessary under this prong of section 300, subdivision (b), it does not always follow that such a finding means that the parent or guardian at issue is unable to provide regular care resulting in a substantial risk of physical harm to the child. The trial court is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case. That being said, "[c]ases finding a substantial physical danger tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's

environment—typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety. [Citations.]" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [2 Cal.Rptr.2d 429].) And we also hold that, in cases involving the second group, the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm.

At the time of the hearing, Drake was only 14 months old. DCFS needed only to produce sufficient evidence that father was a substance abuser in order for dependency jurisdiction to be properly found. DCFS failed to do so.

First, there was no evidence in the record that father failed to fulfill major role obligations at work. Indeed the opposite was true. DCFS reported that father had been employed for many years and "appears capable of providing for the child Drake's basic needs."

Next, there was no evidence in the record that father suffered from recurrent substance-related legal problems. Rather, the record shows that father possessed a valid recommendation from a physician to use marijuana for treatment of his chronic knee pain. There was no evidence in the record that father had a criminal history.

Despite DCFS's allegations, there was no evidence in the record that father was under the influence of marijuana while driving his vehicle. There was no evidence showing that father was still under the influence of marijuana when he picked up Drake from daycare and cared for him alone, nor was there evidence showing that a person remains under the influence of marijuana four hours after smoking it from which it could be inferred that father was still under the influence. As we noted earlier, counsel for DCFS stated, with respect to father's driving to pick up Drake four hours after smoking marijuana, "He would be—he would be subject to sanctions should he be driving with the child. . . . He's legally over any indication that is allowed on any sort of driving limit. I think that the court can easily find that he's regularly under the influence while caring for his child."

■ DCFS, however, failed to provide any evidence such as police reports or other documentation, any controlling legal authority, any expert testimony, or any witness testimony to support this conclusion. California's Vehicle Code does not specify a legal limit for marijuana (as it does for blood alcohol) at which a person is subject to arrest for driving under the influence (DUI). (See generally Veh. Code, § 23152.) Instead, " ' "under the influence" within the meaning of the Vehicle Code, [means] the . . . drug[] must have so

far affected the nervous system, the brain, or muscles as to impair to an appreciable degree *the ability to operate a vehicle* in a manner like that of an ordinarily prudent and cautious person in full possession of his [or her] faculties. [Citations.]' " (*People v. Enriquez* (1996) 42 Cal.App.4th 661, 665 [49 Cal.Rptr.2d 710].) Thus, specific evidence showing actual impairment rather than how much time has passed since a person has smoked marijuana is necessary to show a person is under the influence of marijuana. No such evidence was provided here. Finally, there was no evidence in the record that father continued to use marijuana in the face of having persistent or recurrent social or interpersonal problems caused or exacerbated by marijuana.

■ Our analysis of the record shows that it contains no evidence that father has a substance abuse problem. Even DCFS's attorney conceded at oral argument before us that she could not say, based on the evidence, that father was *abusing* marijuana. As a result, the trial court's finding of jurisdiction based on this prong of section 300, subdivision (b), was not supported by the evidence.

>    b.   *There Was No Evidence Showing That Father Failed or Was*
>         *Unable to Adequately Supervise or Protect Drake*

Despite there being no evidence that father has a substance abuse problem, a finding of jurisdiction based on father's use of marijuana may have been proper if the evidence showed that, as a result, father failed or was unable to adequately supervise or protect Drake. DCFS, who had the burden of proving "jurisdictional facts by a preponderance of the evidence" (*In re D.C., supra,* 195 Cal.App.4th at p. 1014), failed to prove such a link, however. Here, the record shows that father possessed a valid recommendation from a physician to use marijuana for treatment of his chronic knee pain. His continuing usage and testing positive for cannabinoids on drug screens, without more, is insufficient to show that Drake was at substantial risk of serious physical harm or illness. (*In re Alexis E., supra,* 171 Cal.App.4th at p. 453; *In re Destiny S., supra,* 210 Cal.App.4th at p. 1003.)

The record shows that Drake was well cared for. DCFS reported that there was plenty of food in the home and the utilities were working. DCFS described the family's strengths to include that Drake was healthy, that there was family support and that father was employed. Although DCFS initially reported that Drake was three months behind in his immunizations, it later reported that Drake saw his doctor and obtained the proper immunizations. There was no evidence or even allegations of abuse in the home. DCFS also reported that father had been employed for many years and "appears capable of providing for the child Drake's basic needs." There was no evidence showing that Drake was exposed to marijuana, drug paraphernalia or even

secondhand marijuana smoke. DCFS failed to show that there was any link between father's usage of medical marijuana and any risk of serious physical harm or illness to Drake as there was no evidence that father had failed or was unable to provide Drake with adequate supervision or protection.

■ "The record on appeal lacks any evidence of a specific, defined risk of harm" to Drake resulting from father's usage of medical marijuana. (*In re David M., supra*, 134 Cal.App.4th at p. 830.) "Certainly, it is possible to identify many possible harms that *could* come to pass. But without more evidence than was presented in this case, such harms are merely speculative." (*Ibid.*) Prior case law is clear with respect to medical marijuana usage in the context of dependency. Although "even legal[10] use of marijuana can be abuse if it presents a risk of harm to minors" (*In re Alexis E., supra*, 171 Cal.App.4th at p. 452.), a jurisdictional finding under section 300, subdivision (b), based merely on such usage *alone* without *any* evidence that such usage has caused serious physical harm or illness or places a child at substantial risk of incurring serious physical harm or illness is unwarranted and will be reversed.

The record was entirely void of evidence supporting a finding of jurisdiction under section 300, subdivision (b), based on father's conduct and we will reverse the judgment in part as a result.

### 3. *The Trial Court's Family Maintenance Orders Based on Its Erroneous Finding Constitute an Abuse of Discretion*

Father contends that the trial court's orders based on its sustaining count b-3 against him constitute an abuse of discretion. We agree. At the combined jurisdictional and dispositional hearing, the trial court ordered father to randomly test for drugs and to participate in parenting courses and drug counseling.

---

[10] Technically speaking, marijuana usage is not "legal" in the State of California. Possession and cultivation of medical marijuana, when done pursuant to a physician's recommendation, has been decriminalized under the Compassionate Use Act (CUA; Health & Saf. Code, § 11362.5) passed by voters in 1996. (Health & Saf. Code, § 11362.5, subd. (d).) The purposes of the CUA include: (1) "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, *arthritis*, migraine, or any other illness for which marijuana provides relief"; (2) "[t]o ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction"; and (3) "[t]o encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." (Health & Saf. Code, § 11362.5, subd. (b)(1)(A), (B), (C), italics added.)

■ "At the dispositional hearing, the [dependency] court must order child welfare services for the minor and the minor's parents to facilitate reunification of the family. [Citations.] The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion. [Citation.] [¶] The reunification plan ' "must be appropriate for each family and be based on the unique facts relating to that family." ' [Citation.] Section 362, subdivision (c) states in pertinent part: 'The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300.' [Citation.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006–1007 [57 Cal.Rptr.2d 861].)

Although father uses medical marijuana pursuant to a physician's recommendation, there is nothing in the record to indicate that he has a substance abuse problem. Additionally, there is nothing in the record to indicate that his use of medical marijuana led to the finding of dependency jurisdiction as we have found the record does not support count b-3 against him. Without such evidence, the trial court's ordering father to take random drug screens and to participate in drug counseling could not reasonably be designed to eliminate *mother's* substance abuse and mental illness, which are the remaining conditions from which dependency jurisdiction was obtained and, thus, such orders were an abuse of discretion. (See, e.g., *In re Basilio T.* (1992) 4 Cal.App.4th 155, 172–173 [5 Cal.Rptr.2d 450] [concluding that a reunification plan including substance abuse counseling and drug testing was not reasonably designed to eliminate the conditions that led to the trial court's finding that the minor came under the court's jurisdiction pursuant to § 300 because the record included no evidence showing the parents had substance abuse problems].)

Similarly, there was nothing in the record showing that father needed parenting courses. To the contrary, the record shows that Drake was well cared for by father. The imposition of parenting courses cannot be "based on a rote assumption that [father] could not be an effective single parent without parenting classes" and, where, as here, there is nothing in the record supporting an order for such courses, such an order is unjustified. (*In re Jasmin C.* (2003) 106 Cal.App.4th 177, 181–182 [130 Cal.Rptr.2d 558] [concluding that an order requiring a nonoffending mother to take parenting courses was not reasonably designed to eliminate the conditions that led to the trial court's finding that her daughters came under the court's jurisdiction pursuant to § 300 because the record included no evidence supporting the order].) The trial court abused its discretion in ordering father to take parenting courses because such an order is not reasonably designed to

eliminate mother's behavior, which led to the trial court's finding that Drake is a person described by section 300.

## *DISPOSITION*

The judgment is reversed in part as to the jurisdictional finding that pertains to Paul M.'s conduct (count b-3). In all other respects, the judgment is affirmed. The orders requiring Paul M. to randomly test for drugs and to participate in parenting courses and drug counseling are reversed.

Klein, P. J., and Kitching, J., concurred.