Filed 7/9/14  Certified for Publication 8/1/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re REBECCA C., a Person Coming Under the Juvenile Court Law. | B253065 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK60360) |
| Plaintiff and Respondent, | |
| v. | |
| R. C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Los Angeles County Superior Court. Annabelle G. Cortez, Judge.  Reversed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Denise M. Hippach, Deputy County Counsel, for Respondent.

_____

The juvenile dependency court issued jurisdictional orders based on its findings that R. C. (Mother) has a history of substance abuse which renders her incapable of providing her teenage daughter with regular care and supervision. Further, that Mother's drug abuse endangers her daughter's health and safety, and places her daughter at risk of physical harm. On appeal, Mother argues that substantial evidence does not support the dependency court's findings. We agree and reverse.

## FACTS

Mother and Raymond C. (Father)[1] are the parents of Rebecca C. who was born in December 1999. In August 2013, the Los Angeles County Department of Children and Family Services (DCFS) received a referral that Mother and Father used marijuana and methamphetamine in Rebecca's presence, and that there were guns and drug sales in the family home, and that "everyone" who lived in the home was using drugs.

DCFS sent two case social workers to the family home in response to the referral. Mother denied all of the allegations. She stated that she and Father were separated, and that he did not live in the family home. She denied any current use of drugs, and stated that she had completed a drug program in 2006. Mother allowed the case social workers to walk through the family home, and no drugs or guns were noted. Mother and her two adult daughters who resided in the family home agreed to take drug tests. A few days later, Mother's drug test came back positive for methamphetamine, amphetamine, and marijuana.

When the case social workers returned to the family home and told Mother about the drug test, she admitted that she used methamphetamine days earlier, and stated that she "relapsed" due to "being under a lot of stress." Her adult son was "maybe facing the death penalty;" Father had cheated on her and they had separated, and she was having financial problems. Mother "admitted to having a substance abuse problem," and "consented" to Rebecca's removal from Mother's care. Rebecca was taken into protective custody, and placed with an adult sibling. On August 20, 2013, Mother

---

[1]     Father is not involved in the current appeal.

2

completed her intake at a substance abuse program. Meanwhile, when DCFS checked its records, it found the family had a prior child welfare history with the agency. It included a dependency court case, from September 2005 to March 2007, and involved two of Rebecca's older siblings, due to drug use by Mother and Father. Mother also had criminal convictions for theft and drug-related offenses, including being under the influence of a controlled substance and possession of marijuana for sale.

DCFS filed a petition on Rebecca's behalf pursue to Welfare and Institutions Code section 300, subdivision (b).[2] The dependency court found a prima facie case that Rebecca was a person described by section 300, and ordered her detained from Mother's custody.

DCFS filed a jurisdiction and disposition report showing the facts summarized above. Further, Rebecca denied any knowledge of Mother's drug use. Rebecca's adult sibling Renee, knew that Mother used marijuana, but was not aware of her methamphetamine use. Mother reported that she was enrolled in a drug rehabilitation program. Mother said she started using drugs again after she and Father separated at the end of 2012, and their son was charged with murder. Mother indicated she had used drugs since she was a teenager and that her drug of choice was marijuana. Mother said she obtained a medical marijuana recommendation a few years ago for a pinched nerve in her back. Mother claimed she stopped using methamphetamine "years" earlier, and only resumed use recently. Mother claimed she had not used any substance since Rebecca was detained in August 2013. Mother said she was "through getting high," that she felt she was going to "do better," and that she had "new coping skills." DCFS reported that Mother's drug rehabilitation counselor had indicated that although Mother participated in group counseling sessions, the program was concerned because Mother kept testing positive for marijuana and her levels were "up and down." Since 2007, Rebecca had participated in Individualized Education Plan ("IEP") meetings at school and was eligible for special education classes due to a learning disability with deficits in auditory

---

[2]     All further section references are to the Welfare and Institutions Code.

processing and attention. Her last IEP evaluation was in February 2013 and it indicated Rebecca was performing below grade level in reading, written language, and math. Further, the notes from the February 2013 meeting indicated that Rebecca's homework was inconsistent in Language Arts and Math, and completely non-existent in her Science and History classes. Mother had been counseled on the homework policies and had said she would monitor Rebecca's homework.

DCFS's jurisdictional and disposition report included a November 2013 letter from Mother's drug counselor who wrote that since Mother enrolled in the program in late August 2013, Mother had taken nine drug tests, and had tested positive for marijuana eight times. Although Mother was required to attend at least three meetings a week, she had only shown proof of attending about one-half the required meetings. Mother's counselor concluded that Mother was "not in compliance with her treatment plan goals and program requirements" at that time.

Mother was present at the November 12, 2013, adjudication and disposition hearing. After hearing argument from counsel, including Rebecca's counsel who asked that the petition be dismissed, the juvenile court sustained allegations as to Mother under section 300, subdivision (b), as follows:

> " . . . [Mother] has a history of substance abuse and is a recent user of amphetamine, methamphetamine, and marijuana, which renders [her] incapable of providing the child with regular care and supervision. On 8/15/13 and on prior occasions, . . . Mother was under the influence of illicit drugs while the child was in . . . Mother's care and supervision. On 8/15/13, . . . Mother had a positive toxicology screen for amphetamine, methamphetamine, and marijuana. [Rebecca]'s siblings, Raymond C[.], Ruby C[.], and Renee C[.], were dependents of the juvenile court due to Mother's substance abuse. . . . Mother's abuse of illicit drugs endangers [Rebecca]'s physical health and safety, and places the child at risk of physical harm and damage."

4

As to disposition, the juvenile court declared Rebecca a dependent child of the court. The court ordered Rebecca placed in the custody of her parents, and ordered family maintenance services for Mother to include participation in a drug rehabilitation program with aftercare, random drug testing, a 12-step program with a sponsor, and a referral to family preservation services. The court also ordered Mother not to smoke marijuana in Rebecca's presence.[3]

Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends the dependency court's jurisdictional findings are not supported by substantial evidence. We disagree.

## I.      The Law and Standard of Review

As relevant to Mother's current appeal, section 300, subdivision (b), authorizes the dependency court to assert jurisdiction over a child in a number of circumstances: (1) a child "has suffered" serious physical harm as a result of the failure or inability of his or her parent to adequately supervise or protect the child, or (2) "there is a substantial risk" the child will suffer serious physical harm as a result of the failure or inability of his or her parent to adequately supervise or protect the child, or (3) the child has suffered serious physical harm or there is a substantial risk that the child will suffer serious physical harm "by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse."

In short, there are three elements for jurisdiction under section 300, subdivision (b), namely, (1) neglectful conduct or substance abuse by a parent in one of the specified forms; (2) causation; and (3) serious physical harm to the child, or a substantial risk of such harm. (See *In re John M*. (2013) 212 Cal.App.4th 1117, 1124; *In re B.T*. (2011) 193 Cal.App.4th 685, 692.) In Mother's and Rebecca's current case, the focus is on whether there is maternal substance abuse, and whether such substance abuse has caused harm or poses a substantial risk of causing harm to her child.

---

[3]      On August 21, 2013, a few days after DCFS first investigated after receiving the referral, Mother obtained a physician's recommendation letter for medical marijuana use.

5

## II.     The Substance Abuse Findings

Mother argues that the language "substance abuse" as used section 300, subdivision (b), either necessarily or implicitly connotes that a parent has been *diagnosed* as having a substance abuse pathology based upon recognized medical factors.  From this starting point, Mother argues that a parent may not, as a matter of law, be found to have a substance abuse problem within the meaning of section 300, subdivision (b), in the absence of evidence showing that a medical professional has made a substance abuse diagnosis.  Lacking a professional diagnosis, Mother contends, the evidence must otherwise demonstrate the existence of recognized medical factors which would support a substance abuse diagnosis.  Mother argues the evidence presented at the jurisdictional hearing in her current case showed only a "situational" use of drugs, not "substance abuse."

We find Mother's arguments unpersuasive.  The two cases discussed in Mother's opening brief on appeal, *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322 (*Jennifer A.*) and *In re Drake M*. (2012) 211 Cal.App.4th 754 (*Drake M.*), do not support a rule that substance abuse within the meaning of section 300, subdivision (b), must be established by evidence of a medical professional's diagnosis of a substance abuse pathology, or, at least, by evidence showing factors that are recognized in the medical profession to support a diagnosis of a substance abuse pathology.  Although the *Jennifer A.* and *Drake M*. opinions both noted the absence of a medical diagnosis of a substance abuse problem, we do not read either opinion to support the proposition that a showing of a medical diagnosis is a *required* element of proof to find substance abuse under section 300, subdivision (b).

In *Jennifer A.*, which arose in the context of termination of reunification services, the evidence showed that Mother was regularly employed, and that no one involved in the dependencys proceeding had ever expressed any concern about the living conditions in the family home.  Mother had never been incarcerated, had no mental illness history, and had a parent-child relationship with her children.  She "always acted appropriately" during visits after the dependency proceedings were initiated.  In short, the only evidence

6

to support the continuation of the dependency court's jurisdiction was the "opinion" of the social worker, unsupported by foundational facts, that Mother's use of alcohol and marijuana amounted to substance abuse that posed a continuing risk of harm to her children. The Court of Appeal found this evidence insufficient in the termination of services context. (*Jennifer A., supra*, 117 Cal.App.4th at pp. 1336-1338, 1343-1347.)

*Drake M*. arose in the context of a challenge to jurisdictional findings. There, the Court of Appeal reversed a jurisdictional finding based on a father's use of medical marijuana. (*Drake M., supra*, 211 Cal.App.4th at pp. 757-758.) In reversing the finding, the Court of Appeal noted that there was no evidence the father had been diagnosed with a substance abuse problem by a medical professional or that he had a substance abuse problem as defined in the American Psychiatric Association's published Diagnostic and Statistical Manual of Mental Disorders. Further, the social services agency had not presented evidence showing that the father failed to fulfill his work obligations, suffered from any substance-related legal problems, drove his vehicle while under the influence of drugs, or used drugs to deal with social or interpersonal problems. (*Id*. at pp. 766-768.) Additionally, there was no evidence that the father was unable to adequately supervise or protect his child. Instead, the evidence showed that the child was healthy, and being well cared for by his parents, and had not been exposed to marijuana or second-hand marijuana smoke. (*Id*. at pp. 768-769.) Based on that record, the Court of Appeal concluded that father's use of marijuana, standing alone under the circumstances which it did, was insufficient to support a finding that his child was at substantial risk of harm. (*Id*. at p. 769.)

As the summary of the *Jennifer A*. and *Drake M*. opinions show, neither case supports the rule that a diagnosis of a substance abuse problem is a required element of proof to find a substance abuse problem. On the contrary, the rule to be taken from *Jennifer A*. and *Drake M*. is that the absence of a medical diagnosis of substance abuse, and a lack of evidence of life-impacting effects of drug use, will not support a finding that a parent has a substance abuse problem justifying the intervention of the dependency court.

7

But even assuming that Mother is correct that evidence to support a substance abuse finding must have some relationship to a diagnosis of substance abuse, or to the types of factors involved in such a diagnosis, we would still find substantial evidence here. The evidence in the lower court showed Mother's use of drugs over a period of years. This was shown by her involvement in the criminal court system and dependency court system as the result of the use of drugs, her prior involvement in a drug program and her "relapse," her lying about her use of drugs, rationalization for the use of drugs, and her admission that she had a substance abuse problem. These types of factors are involved in a diagnosis of substance abuse under recognized professional publications. (See *Drake M., supra*, 211 Cal.App.4th at p. 766.) We are more than amply satisfied that substantial evidence supports the dependency court's finding in the present case that Mother suffers from a substance problem within the meaning of section 300, subdivision (b).

## III. The "Endangers" and "Risk of Harm" Findings

Mother contends the evidence does not support the dependency court's finding that her substance abuse has caused or is causing a substantial risk of harm to Rebecca. We agree.

Mother argues the evidence does not show that her "lapse . . . cause[d] any harm to thirteen-year-old Rebecca." She notes that, when the family residence was inspected by the investigating social workers, it was clean, free of hazards, stocked with food, and clear of drugs and firearms. Rebecca denied any physical or emotional abuse, did not show any signs of physical abuse, and was not fearful of Mother. Rebecca was up to date on medical and dental check-ups. Mother enrolled Rebecca in special education during the fourth grade; Mother regularly attended individual education plan meetings on behalf of Rebecca. When confronted with her positive drug test, Mother committed herself to a program. According to Mother's summary of the evidence, it supports a conclusion that she "made a mistake" in relapsing, but did not provide a basis to justify jurisdiction of the dependency court system. Relying on *In re Destiny S.* (2012) 210 Cal.App.4th 999,

8

1003, Mother concludes with the argument that evidence showing "mere usage of drugs is not a basis for the assertion of dependency [court] jurisdiction."

The first argument offered by DCFS that Mother's substance abuse is causing or presents a risk of causing physical harm relies on the evidence concerning Rebecca's educational history. DCFS cites to evidence showing that, in November 2013, one of Rebecca's teachers told a case social worker that Rebecca had only "recently" started to complete her homework assignments regularly. DCFS says that this evidence shows that Mother's "illicit drug use was interfering with her ability to parent Rebecca and ensure her educational needs were being met." This takes the dependency statutes too far. If a parent's failure to keep on top of a teenage child's homework assignments is sufficient to show "physical harm," many, many parents would be subject to DCFS intervention. The required risk under section 300, subdivision (b), is a risk of "physical harm," and homework issues do not rise to a level of physical harm.

DCFS next argues that methamphetamine, amphetamine and marijuana are well-recognized to be substances which cause hallucinogenic or stimulant-driven behavior. DCFS argues that "[t]he risk to a child being cared for by a parent under the influence of such substances is not speculative." We do not accept DCFS's argument. It excises out of the dependency statutes the elements of causation and harm. In other words, DCFS essentially argues that, when a parent engages in substance abuse, dependency court jurisdiction is proper. This is not what the dependency law provides. Further, if DCFS's position were accepted, it would essentially mean that physical harm to a child is *presumed* from a parent's substance abuse under the dependency statutes, and that it is a parent's burden to prove a negative, i.e., the *absence* of harm. Again, this is not what the dependency law provides. We agree with Mother that the evidence in the case is not sufficient to support the finding that her substance is causing, or there is a risk it will cause, physical harm to Rebecca.

9

## DISPOSITION

The dependency court's jurisdictional orders are reversed.


                                         BIGELOW, P.J.

We concur:


        RUBIN, J.


        FLIER, J.


10

Filed 8/1/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re REBECCA C., a Person Coming Under the Juvenile Court Law. | B253065 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK60360) |
| Plaintiff and Respondent, | **ORDER CERTIFYING PUBLICATION** |
| v. | |
| R. C., | (No Change in Judgment) |
| Defendant and Appellant. | |

THE COURT*:

The opinion in the above entitled matter filed on July 9, 2014, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

\*  BIGELOW, P. J.              RUBIN, J.              FLIER, J.