Filed 9/21/16  In re L.S. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re L.S., a Person Coming Under the Juvenile Court Law. | B269060 (Los Angeles County Super. Ct. No. CK95203) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DAVID S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip Soto, Judge.  Reversed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Finding no substantial evidence, we reverse the juvenile court's jurisdictional order, which took jurisdiction over L.S. based on her father David S.'s (father's) alleged substance abuse.

## BACKGROUND

When this dependency proceeding began in October 2015, two-year-old L.S. lived with her father and his wife J. (whom the juvenile court referred to as L.S.'s presumed mother). L.S. had been removed from her biological mother's care, and her biological mother's reunification services previously had been terminated with no visitation.

At the request of the Los Angeles County Department of Children and Family Services (DCFS), father tested for controlled substances. He tested positive for methamphetamine on October 7, 2015. On October 29, 2015, the juvenile court allowed father to return to his home, but forbade him from being alone with L.S. The juvenile court admonished father to stop using methamphetamine.

Father initially did not stop using methamphetamine, and he tested positive for amphetamine and methamphetamine on October 29 and November 24, 2015. Father tested negative on December 1, 2015. (Father missed one test, but the social worker confirmed that the testing site was closed on his test day.)

When first interviewed, father initially denied using methamphetamine. He later admitted that he used methamphetamine in the summer of 2015 at a party he attended, and that he used it again after that party. Father stated that he did not use methamphetamine when he cared for L.S., and J. never observed him under the influence of methamphetamine. Father did not exhibit aggressive behavior or changes in appetite. J. described father as a hard worker and responsible man. She further reported that L.S. was "always" with her.

When a social worker arrived unannounced at the family home, she did not observe any drugs or drug paraphernalia in the home. L.S. appeared "comfortable" with father, she was clean, and "appeared to be healthy, happy and well cared for." The social worker described the home as very clean and well organized.

DCFS reported that both father and J. were cooperative and willing to accept services. Father was employed. Both father and J. loved L.S. very much, and L.S. had "a healthy bond" with both father and J. L.S. was developing at an age appropriate level. The social worker reported that "the Department remains confident that presumed mother [J.] will take the necessary steps to ensure the safety and wellbeing of child [L.S.]."

As sustained, the Welfare and Institutions Code section 300 petition alleged father "is a current abuser of amphetamine and methamphetamine which renders the father unable to provide regular care of the child. The father had a positive toxicology screen for amphetamine and methamphetamine on 10/07/ 2015. The child is of such a young age and requires constant care and supervision and the father's substance abuse endangers the child's physical health and safety, creates a detrimental home environment and places the child at risk of serious physical harm, damage and danger." Following the jurisdictional hearing, L.S. remained placed with father and J. under the supervision of DCFS.

**DISCUSSION**

On appeal, father argues the record lacked substantial evidence to support jurisdiction. Respondent acknowledges that "the use of drugs without more is not sufficient to establish jurisdiction over the child," but argues that father was "not a casual user." As we explain, we conclude the juvenile court's jurisdictional order is not supported by substantial evidence.

" ' "In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] " '[T]he [appellate] court must review the whole record in the light most favorable to the

3

judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].' " ' " ' " (*In re D.C.* (2015) 243 Cal.App.4th 41, 51-52.)

In *In re Rebecca C.* (2014) 228 Cal.App.4th 720, a case similar to the present one, we explained the requirements for jurisdiction: "(1) neglectful conduct or substance abuse by a parent in one of the specified forms, (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm." (*Id*. at pp. 724-725.) In *Rebecca C*., the mother used marijuana and methamphetamine, stopped after completing a drug rehabilitation program but relapsed when she was under stress. (*Id*. at p. 721.) In that case, we concluded that although the mother had a substance abuse problem, there was no evidence that she caused her daughter Rebecca substantial risk of physical harm.

With respect to substance abuse we summarized prior cases explaining that "the absence of a medical diagnosis of substance abuse, *and* a lack of evidence of life-impacting effects of drug use, will not support a finding that a parent has a substance abuse problem justifying the intervention of the dependency court." (*In re Rebecca C., supra*, 228 Cal.App.4th at p. 726, italics added.) In *Rebecca C*., we held that the following evidence supported a finding that mother suffered from substance abuse: mother was involved in the criminal court system and dependency court system as a result of her use of drugs, she participated in a drug program but relapsed, she lied about her use of drugs and admitted having a substance abuse problem. (*Id*. at p. 727.)

With respect to the second element—causation, we rejected DCFS's argument that the use of methamphetamine and amphetamine standing alone posed a risk to her daughter, explaining: "We do not accept DCFS's argument. It excises out of the dependency statutes the elements of causation and harm. In other words, DCFS essentially argues that, when a parent engages in substance abuse, dependency court jurisdiction is proper. That is not what the dependency law provides. Further, if DCFS's position were accepted, it would essentially mean that physical harm to a child is *presumed* from a parent's substance abuse under the dependency statutes, and that it is a

4

parent's burden to prove the negative . . . ." (*In re Rebecca C., supra*, 228 Cal.App.4th at p. 728.)

As *Rebecca C.* explained, the first question in analyzing the sufficiency of the evidence is whether there was evidence of substance abuse. (*In re Rebecca C., supra*, 228 Cal.App.4th at pp. 724-725.) Here, we find none. There was no evidence father failed to fulfill his major obligations. DCFS noted that he worked, and identified that as a strength for the family. J. reported that father supported the family and was responsible, and the record contains no contrary evidence. There was no evidence that father used methamphetamine or amphetamine at home or in L.S.'s presence. J. saw no sign of drug use, and the social worker who arrived at the family home unannounced saw no sign of drugs or drug paraphernalia. The social worker observed father and L.S. share a bond.

Respondent's argument that father used methamphetamine after being admonished by the juvenile court does not demonstrate substance abuse. Taken to its logical conclusion, the contention would eviscerate the distinction between substance use and substance abuse. Anytime DCFS identified a parent as a user and warned the parent to stop using, the use would then automatically rise to the level of abuse, a conclusion at odds with current law. The use of a controlled substance is not sufficient to support jurisdiction. (*In re Rebecca C., supra*, 228 Cal.App.4th at p. 726.)

Even assuming that there was substantial evidence of substance abuse, respondent identifies no evidence that father's substance abuse posed a substantial risk of harm to L.S. Therefore respondent fails to show causation, the second element necessary to support jurisdiction. Therefore, for this second reason the juvenile court erred in assuming jurisdiction.

Although evidence that a parent frequently used controlled substances is prima facie evidence that the parent is unable to care for a young child of " 'tender years' " (*In re Drake M.* (2012) 211 Cal.App.4th 754, 767), here any such evidence has been rebutted. It was undisputed that father did not use controlled substances in his home or in L.S.'s presence. The social worker found no drugs or drug paraphernalia in the home. J. never observed father under the influence of a controlled substance in the home. It was

5

undisputed that L.S. was healthy and happy.  There was no evidence that she was harmed or neglected.  In *Rebecca C.*, we reversed the juvenile court's jurisdictional order even though the mother had criminal convictions for drug-related offenses, had relapsed, and had admitted a substance abuse problem including methamphetamine.  (*In re Rebecca C., supra*, 228 Cal.App.4th at p. 722.)  Here the far less egregious facts require the same result; there was no evidence of substance abuse or of risk to L.S. to warrant the dependency court's jurisdiction.[1]

## DISPOSITION

The juvenile court's jurisdictional order is reversed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

---

[1]    This case is different from *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1220, in which the court found mother and father's substance abuse supported dependency jurisdiction.  In contrast to *Christopher R.*, here there was no evidence of criminal convictions, of leaving L.S. unattended, or of harm to L.S. caused by father or J.