Filed 6/24/14  In re D.S. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.S. et al., Persons Coming Under the Juvenile Court Law. | B250813 (Los Angeles County Super. Ct. No. CK99002) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.J., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline H. Lewis, Commissioner.  Affirmed.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Appellant S.J. (mother) appeals from the juvenile court's jurisdictional and dispositional order. She contends there is insufficient evidence to support the jurisdictional finding that she placed her children at risk of harm by leaving them with a registered sex offender and that the juvenile court abused its discretion by requiring her to participate in sexual abuse awareness counseling. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has three children—son D.S. (age 9), and daughters A.A. (age 5) and K.A. (age 3). Lee A. (father) is the presumed father of the girls and has known D.S. since he was a baby and considers him a son. D.S. refers to father as "Dad."

Mother has a criminal history including convictions for grand theft, forgery and embezzlement, and arrests for loitering with the intent to prostitute and drug possession. She has been diagnosed with major depressive disorder. Father has an extensive criminal history, including several drug-related convictions. In 1984, father was convicted on a charge of lewd or lascivious acts with a child under 14 years of age. Father is a registered sex offender.

### The Referrals

In May 2012, the Los Angeles Department of Children and Family Services (DCFS) received a referral alleging that mother had moved to Las Vegas, and the minors were at risk of sexual abuse by father, with whom they were living upon his release from prison for selling drugs. The referral was closed as inconclusive due to loss of contact with the parents, and the minors began living with the paternal grandparents.

In November 2012, DCFS received a second referral of sexual abuse by father. Father contacted DCFS to inquire about gaining custody of the minors. During a subsequent interview, father claimed that mother had been missing since October 26, 2012 and that he thought she might be using drugs. Father admitted that when he was 18 years old he had a sexual interaction with his 11-year-old cousin. The paternal aunt and paternal great aunt, who lived in the same house with father and the minors, reported that father was taking good care of the minors and that he was never left alone with them. Father's probation officer, who had worked with father for about seven to eight months,

2

reported that when father brought the children with him to her office, his interaction with the children appeared to be "appropriate." The officer believed that father was consistent in setting limits with the minors and believed they were bonded with father and comfortable in his presence. Neither the probation officer nor the girls' school teacher expressed any concerns of abuse or neglect by father.

In January 2013, DCFS received a third referral of sexual abuse by father, who was then incarcerated for failing to keep his ankle monitor charged. Prior to the referral, in December 2012, father brought the minors to his probation office and D.S. was observed to be rolling his eyes, breathing rapidly, and appeared to be angry when he looked at father. When D.S. was asked if father had done something to make him upset, father grabbed the boy. Father was instructed to release D.S., who was unable to answer the question. According to the social worker, "The reporting party has concerns about the children being at risk."

When the social worker later interviewed D.S. privately at school, he did not recall being mad at father while at the probation office. D.S. reported that he had no problems with father, that he liked living with father, and that father had never touched him inappropriately. The girls reported feeling safe with father. While the investigation was ongoing, father began using drugs and disappeared.

### The Petitions

On April 15, 2013, DCFS filed a petition on behalf of the minors under Welfare and Institutions Code section 300, subdivision (b).[1] The petition alleged in count b-1 that mother had endangered the minors and placed them at risk of harm by leaving them with father, a registered sex offender. Count b-2 alleged that father has a history of illicit drug use and is a current abuser, which renders him incapable of providing regular care and supervision of the minors. On May 7, 2013, DCFS filed an amended petition adding count b-3, alleging that mother has a history of illicit drug use and is a current abuser.

---

[1]   All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

D.S. was placed with the maternal great grandmother and A.A. and K.A. were placed with the paternal grandparents.

### Subsequent Reports

Mother admitted learning in 2007 that father is a registered sex offender, after she was denied an apartment and the landlord sent her a copy of father's criminal history. She denied knowing the terms of his parole. Mother also admitted that she left the minors with father in his aunt's house. From October 2012 to January 2013, mother "was out there prostituting and did not visit the children" because she did not want them to see her "like that." Mother also admitted knowing that father was using drugs after being released from jail in February 2013. D.S. and A.A. confirmed that father had cared for them at the paternal aunt's house. D.S. slept on a couch in the living room, while father slept with the girls in a bed. A.A. stated, "It was nice there." Father's whereabouts remained unknown.

### Jurisdictional/Dispositional Hearing

The combined jurisdictional and dispositional hearing was held on June 3, 2013. Mother was present, father was absent. At the hearing, the minors' attorneys asked the juvenile court to dismiss the count b-1 allegation that mother's leaving the minors with father placed them at risk of harm. Mother's attorney joined in the request. The juvenile court denied the request and sustained all counts in the amended petition. The court ordered the minors removed from their parents, and to remain in their current relative placements.

As to disposition, the juvenile court ordered family reunification services for mother, consisting of a drug rehabilitation program with random drug testing, sexual abuse awareness counseling, and individual counseling to address drug use, criminal activity and sexual abuse awareness. The court did not order any services for father until he appeared, and ordered monitored visitation for both parents.

Mother filed this appeal.

4

## DISCUSSION

### I. Jurisdictional Finding on Count b-1

Mother contends the evidence was insufficient to support a finding that the minors came within the statutory definition of a dependent child under count b-1.[2]

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762, citing *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Mother acknowledges this rule and concedes that the juvenile court was entitled to assume dependency jurisdiction over the minors based on the sustained drug counts. Nevertheless, she urges us to reach the merits of the juvenile court's true finding on count b-1, noting that "we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction [citation].'" (*In re Drake M., supra,* at pp. 762–763.) Because mother challenges that part of the dispositional order that is based on the jurisdictional finding on count b-1, we address the merits of mother's contention.

---

[2]     Count b-1 alleges: "On prior occasions, in 2012, the children's . . . mother, S[.] J[.], placed the children in a detrimental and [an] endangering situation [in] that the mother left the children in the care and supervision of the mother's male companion, Lee A[.], father of the [girls], who is a registered sex offender, having been convicted of Lewd an[d] Lascivious Acts With a Child Under 14. Such a detrimental and endangering situation established for the children by the mother endangers the children's physical health and safety and places the children at risk of physical harm and damage."

A child comes within the jurisdiction of the juvenile court under section 300, subdivision (b) if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . ." "The statutory definition consists of three elements: (1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

The Legislature has declared that when a registered sex offender, like father, resides with a child, it is prima facie evidence that the child falls within section 300 and "is at substantial risk of abuse or neglect." (§ 355.1, subd. (d).)[3] Mother concedes that father's status as a sex offender created a rebuttable presumption of risk, and that the juvenile court was entitled to discount statements from the paternal relatives and rely instead on statements from the minors that they were sometimes left alone with father.

Nevertheless, she claims that the evidence in the record rebuts the presumption. She argues that father's status as a registered sex offender was based on a single, 30-year-old conviction; there was nothing in the record to indicate that father was a serial pedophile; neither father's probation officer nor the girls' teacher had any concerns regarding abuse by father; and the minors' attorneys did not see any current risk based on father's registered sex offender status. But the fact that father's conviction occurred in 1984 is irrelevant, because section 355.1, subdivision (d) has no statutory time frame regarding when the sexual abuse conviction occurred. And while people acquainted with father and the minors may have believed that he was taking good care of the minors and

---

[3] Section 355.1, subdivision (d) provides in part: "Where the court finds that either a parent, a guardian, or any other person who resides with, or has the care or custody of, a minor who is currently the subject of the petition filed under Section 300 . . . (4) is required, as the result of a felony conviction, to register as a sex offender pursuant to Section 290 of the Penal Code, that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence."

did not pose a risk of abuse, the record shows that father was sleeping in the same bed as the two young girls.

As the juvenile court aptly stated at the combined jurisdictional/dispositional hearing: "I guess this [is] a whole lot clearer to me than anybody else. Mother knew she left the children alone with a registered sex offender, period. That's the end of the story here. [¶] She says she didn't know the terms of his probation. I don't care whether she knew the terms of his probation or didn't know the terms of his probation. Why would you leave your—at the very least, your three-and five-year-old little girl[s] with a registered sex offender? I don't understand it. [¶] I think that [section] 355.1 affects the burden of proof, which has not been shifted. And I think that the case of *In re Carlos T.* [(2009) 174 Cal.App.4th 795], as I previously stated, . . . [¶] I think that, absent there being some showing and mother knowing that he had completed some programs, that he was no longer a risk to children—that's what would need to be shown here to show me that it was not a failure to protect to leave these children with somebody she knew had been convicted of lewd and lascivious acts with a child under the age of 14."

We find that mother has not rebutted the statutory presumption of risk to the minors by leaving them with a man she knew to be a registered sex offender. Accordingly, we find no error in the juvenile court's assumption of jurisdiction under count b-1.

## II. Dispositional Order

Mother contends that the juvenile court erred in requiring her to participate in sexual abuse counseling. Specifically, she argues "because no substantial evidence showed that mother had made a bad decision by placing the minors with their father—at least as related to his status as a sex offender—no substantial evidence showed that requiring mother to participate in sexual abuse awareness counseling would help eliminate the need for dependency court intervention." Because we have concluded that the juvenile court properly assumed jurisdiction over the minors under count b-1, there is no merit to mother's argument.

7

**DISPOSITION**

The jurisdictional and dispositional order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
        ASHMANN-GERST

We concur:

_____, P. J.
    BOREN

_____, J.*
    FERNS

---

*  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.