Filed 10/31/14  In re Daniel T. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re DANIEL T., a Person Coming Under the Juvenile Court Law. | B253783<br>(Los Angeles County<br>Super. Ct. No. DK00135) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>LUKE O.,<br><br>        Defendant and Appellant. | |

APPEAL and CROSS-APPEAL from orders of the Superior Court of Los Angeles County.  Julie Fox Blackshaw, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Appellant.

## SUMMARY

Luke O. ("Father") appeals from the juvenile court's order of December 18, 2013, finding it would be detrimental to his son, Daniel, to be placed in Father's custody under Welfare and Institutions Code[1] section 361.2. The Los Angeles Department of Children and Family Services (DCFS) cross-appeals from the juvenile court's order of the same day dismissing with prejudice the section 342 petition with prejudice based on insufficient evidence.

We disagree with both sides' contentions and affirm.

## STATEMENT OF FACTS AND PROCEDURE

On July 25, 2013, DCFS filed a section 300 petition (hereafter Petition) on behalf of Daniel, who was at that time 10 days old. The Petition alleged that Daniel's mother, Stephanie T. (hereafter Mother) had mental problems rendering her incapable of providing regular care for Daniel and placing him at risk of physical harm, damage, and danger. No allegations in the Petition were made against Father.

Also on July 25, 2013, DCFS filed a Detention Report (hereafter Detention Report) stating that Daniel was born in an alley in Venice, California, and was taken to the hospital by emergency services team. The hospital was concerned about Mother's ability to care for Daniel given that Mother was living on the streets, appeared to be mentally ill, had no support network besides friends also living on the streets, and had no substantial living arrangements that would support Mother as well as Daniel.

The Detention Report indicated that Father was homeless and messages left for Father had not been returned at the time the Detention Report was written. In a July 22, 2013 interview with a DCFS social worker, Mother stated that Father was not interested in being involved with Mother or Daniel, that Father believed Mother got pregnant on

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

purpose, and that Mother had seen Father "use meth and heroin."[2]  Mother also stated that Father's mother (hereafter PGM) was very kind to her but could not care for the baby due to her own health issues.

Attached to the Detention Report was a July 19, 2013 report from the hospital's social worker, indicating that Mother stated that she and Father were no longer in a relationship, that Father has a history of alcohol and drug abuse, that Father was aware the baby had been born, and that the PGM was planning on visiting at the hospital that day.  The hospital social worker's report also indicated that Mother denied alcohol and drug use and that Mother's toxicology lab report came back negative.  Mother, however, stated that she smoked one and a half packs of cigarettes a day and also indicated to a nurse that she has a medical marijuana card and prefers to eat or use lotion containing marijuana rather than smoking it.

Also on July 25, 2013, Father filed a Statement Regarding Parentage form in which he asked for blood or DNA testing to determine if he was Daniel's father and, under the section entitled "[o]ther information I want the court to know" wrote:  "I do not know for certain if the child is mine, but would request the child be placed with [a named] foster parent."

Father appeared at the July 25, 2013 detention hearing and was appointed counsel.[3]  The court ordered DNA testing, detained Daniel in foster care, and granted monitored visits to Mother and Father.

In the August 27, 2013 Jurisdiction/Disposition Report, DCFS indicated that it had attempted to interview Father by telephone but he had not called back.

At the September 3, 2013 jurisdiction/disposition hearing, Mother pled no contest to the amended Petition.  The juvenile court sustained the Petition as amended, declared Daniel to be a dependent of the juvenile court and granted Mother and Father monitored

---

[2] Mother denied using drugs herself.  The social worker observed mother to "be coherent and able to respond appropriately to [the social worker's] questions.  Mother did not appear to be under the influence of any substances."

[3] A reporter's transcript of the July 25, 2013 hearing is not included in the record.

3

visits. At Mother's request, the juvenile court ordered an evaluation of maternal uncle living in Florida under the Interstate Compact on the Placement of Children (ICPC). Father's counsel noted the paternal grandparents (hereafter PGP's), who were present at the hearing, had indicated that "they've had a change of heart, they're very interested in placement" but "a lot depends on what" the DNA test results were once the results were received. The juvenile court ordered reunification services for Mother but not for Father as he was only an alleged father under section 361.5(a). The disposition hearing was continued to October 17, 2013, at which time the court expected to have the DNA test results and the ICPC report.

In a Last Minute Information For the Court filed on October 17, 2013, DCFS attached a report from the Multidisciplinary Assessment Team indicating that in a September 6, 2013 interview, Father was asked about his goals for Daniel and Father responded that he was waiting for the results of DNA testing. Father stated that if DNA testing determined he was not Daniel's father, he would continue to visit the child "while time permits," and that if he were Daniel's father he would "figure it out." Father had stopped visiting Daniel and was not returning DCFS phone calls. Father said that he and Mother met "on the streets" and "travelled" together for four or five months but were no longer together. Father admitted he had a substance abuse history "until two years ago." Father reported that he was unemployed and lived with the PGP's.

The October 17, 2013 Last Minute Information also reported that DNA testing indicated a 99.99 percent probability that Father was Daniel's biological father. DCFS reported that Father had a criminal history consisting of arrests from 2008 to 2013 for driving with a suspended license, inflicting corporal injury on a spouse/cohabitant, two burglaries, grand theft, possession of controlled substance paraphernalia, and outstanding warrants and convictions for vehicle theft and for violating a local ordinance. Father's last arrest was on October 3, 2013 for a warrant.

DCFS also reported that, after several attempts to reach Father by telephone, the DCFS investigator located Father at the PGP's home on October 9, 2013. Father did not allow the investigator into the home, saying his parents "would not like that." When

asked if he was residing at the home, Father said he was in the process of looking for his own place. The investigator told Father that she could transport him to a toxicology screening but Father stated he would not be available until five days later.

The Last Minute Information also reported that the foster parent reported on October 9, 2013, that Father had visited four times—three times in August 2013 and one time on October 8, 2013—and that the PGM "has been visiting in his place." The foster parent was told by the PGM that Father was not visiting because paternity was uncertain but now that it was established, Father was planning on having regular visits with Daniel.

At a hearing on October 17, 2013, the juvenile court found Father to be Daniel's presumed biological father[4] and set a pre-release investigation hearing as to the PGP's for October 31, 2013.

On October 31, 2013, DCFS filed a section 342 petition alleging Father's drug use rendered him incapable of providing Daniel regular care and supervision.

In a Non-Detained Report Pursuant to WIC 342 filed on October 31, 2013, DCFS reported that it received the results from Father's October 15, 2013 drug test, which showed Father tested positive for marijuana. The report indicated that on October 25, 2013, the social worker visited the PGP's and was informed that Father's whereabouts were unknown and they were unable to contact him. Father's father (hereafter PGF) said Father was "getting his life in order" and was unable to supervise or provide ongoing care of Daniel. The PGF stated that Father was unemployed and that he gives Father a $20 weekly allowance. The PGF said that Father had moved out of the home at age 18, and had returned a year and a half ago looking unwell and requiring methadone treatment to "get off" pain medication. The PGF said it was decided "at that point that using medicinal marijuana was a better option" for Father. He acknowledged that Father did not want to drug test because he knew he would test positive, and his medical marijuana card had expired.

---

[4] Because of a disparity between the minute order and the court's oral statements, parties also later stipulated to Father's presumed paternity at the December 11, 2013 hearing.

5

The social worker advised the PGP's that Father did not appear interested in cooperating with DCFS or caring for Daniel, because he had visited the child only four times, did not allow DCFS access to the PGP's home, delayed in submitting to a toxicology screen, and failed to respond to DCFS's efforts to engage him in case planning.

At the October 31, 2013 hearing, the juvenile court set a jurisdiction hearing on the section 342 petition, received the Non-Detained report into evidence, granted DCFS discretion to place Daniel with the PGP's if Father moved out of the home, ordered DCFS to refer Father for on demand random drug testing, and ordered DCFS to provide Father with assistance or funds for transportation.

In a Last Minute Information for the Court form filed on November 13, 2013, DCFS reported that a visit to the PGP's home on November 11, 2013, showed that Father had removed his belongings from the home and the PGM provided Father's new address. Daniel moved into the home of the PGP's on November 13, 2013.

In a Last Minute Information for the Court form filed on December 11, 2013, DCFS reported that on November 20, 2013, the investigator visited Father in the apartment he was living in with a friend and spoke to Father. Father agreed to participate in random drug testing, the DCFS investigator explained the process, and Father called the testing number while the investigator was there to ensure he understood the process of calling and listening for his code to see if he should appear for testing. DCFS reported that on November 25, 2013, Father failed to submit to a random drug test. Father claimed that he had difficulty calling the number and listening for his code and stated that a set schedule for drug testing would be easier for him. DCFS also reported that when asked how he felt about Daniel not being in his care and custody, Father responded that Daniel was in the best place he could possibly be with the PGP's and Father acknowledged that he was currently not in a position to assume care and custody of Daniel.

On December 11, 2013, the juvenile court continued the scheduled jurisdiction hearing on the section 342 petition because DCFS had failed to submit a jurisdiction

6

report.  The juvenile court also admonished Father that "it would be helpful to the court for you to have some negative test results."

In a Jurisdiction/Disposition Report filed on December 18, 2013, DCFS noted that Father appeared to be "under the influence" during a prior meeting with DCFS because of his "very slow" responses and that during a prior visit to Father's apartment, there was a strong odor of marijuana in the home.  Father was re-interviewed on December 12, 2013, and he claimed he provided a copy of a medical marijuana card to his attorney.  Father stated that he began using medical marijuana two to three years ago to treat "spinal issues" after going through a "dark period" of using Vicodin given to him by his friends for back pain.  When asked about his methadone use, Father claimed that the methadone was also used to treat his back pain.  When asked about Mother's statement that she ended their relationship because of his drug use, Father stated that Mother was lying and claimed he only used medical marijuana while they were together.  Father indicated that he needed to secure employment and stabilize his life before assuming custody of Daniel and, at the moment, Daniel was in the best placement he could possibly be with his PGP's.  The report indicated that DCFS recommended Daniel remain with the PGP's and that Father be offered reunification services.  The Jurisdiction/Disposition report noted that Father had visited Daniel three times since October 8, 2013—on November 16, 2013, November 19, 2013, and November 28, 2013, for three hours per visit.

At the December 18, 2013 section 342 jurisdictional hearing, the juvenile court received into evidence the July 25, 2013 detention report, the September 3, 2013 jurisdiction report, the October 17, 2013 last minute information, the November 13, 2013 last minute information and the December 18, 2013 jurisdiction report and their attachments.  Father's counsel asked the juvenile court to dismiss the section 342 petition for lack of evidence.  Counsel for DCFS asked the court to sustain the petition, and Daniel's counsel joined with DCFS.

The juvenile court dismissed the section 342 petition with prejudice, noting that there was insufficient evidence of current risk to Daniel as a result of Father's marijuana use, and no evidence that Father had a substance abuse problem "as required by the case

7

of *In re Drake M.*"[5]  The court stated:  "There is no question that father uses marijuana. But use alone, without it being a–similar to a diagnosis by a medical professional as a substance abuse problem under *Drake M.* is not sufficient for a jurisdictional finding."

Father's counsel then requested that Daniel be released to Father pursuant to section 361.2.  After noting that it did not have to release Daniel to a non-custodial parent if it would be detrimental to the child, the juvenile court stated, "So I think given the father's condition, the fact that the father is not employed, as far as I know, does not really have anywhere to live, that that shows a detriment to the child."  The court ordered Daniel to remain with the PGP's.

Father's counsel argued there was no risk to Daniel if released to father on the condition that father lives with the PGP's.  The juvenile court responded, "I actually do believe that there is a detriment right now because of the instability of the father's life."

Father's counsel asked that Father be permitted to live with the PGP's, and the juvenile court agreed, ordering that Father could live with the PGP's and visits between Father and Daniel would be unmonitored in the home but monitored outside the home.

Father appealed and DCFS cross-appealed.

## DISCUSSION

On appeal, Father argues that the evidence was insufficient to support the juvenile court's determination that it would be detrimental to place Daniel with Father as the non-custodial parent under section 361.2.  DCFS contends that there was insufficient evidence to support the juvenile court's decision to dismiss the section 342 petition.  We affirm.

### I.      Section 342 Petition

We address DCFS's contentions first.

Under section 342, "[i]n any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition. . . . [¶]

---

[5] *In re Drake M.* (2012) 211 Cal.App.4th 754.

8

All procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section." (Welf. & Inst. Code, § 342.) In order for a juvenile court to sustain an original petition, "[p]roof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by Section 300." (Welf. & Inst. Code, § 355, subd. (a).) "The basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm." (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134.)

"In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)

Under section 300, subdivision (b), jurisdiction is appropriate where the court finds "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse." "[T]hree elements must exist for a jurisdictional finding under section 300, subdivision (b): '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.] 'The third element "effectively requires a showing that at the time of the jurisdiction hearing the child is at substantial risk of serious physical harm in the future . . . ."'" (*In re J.O.* (2009) 178 Cal.App.4th 139, 152.)

Drawing all reasonable inferences to support the juvenile court's determination, we find that substantial evidence supports the juvenile court's decision to dismiss the

9

section 342 petition. As the juvenile court noted, there is no dispute that Father uses marijuana. However, the evidence does not demonstrate that Father's lack of employment, periods of homelessness and criminal history were the result of his marijuana use. (See *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 765.)

Accordingly, we affirm the juvenile court's dismissal of the section 342 petition.

## II.     Placement under Section 361.2

Under section 361.2, subdivision (a), a juvenile court ordering removal of a child under section 361 must "first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (Welf. & Inst. Code, § 361.2, subd. (a).) "A detriment evaluation requires that the court weigh all relevant factors to determine if the child will suffer harm." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425.) In assigning custody of the child to either parent, "the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)

A juvenile court's decision not to place a dependent child with a noncustodial parent is reviewed for substantial evidence. (*In re Luke M.*, *supra*, 107 Cal.App.4th at p. 1425.) "'We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the children would suffer such detriment. [Citations.] Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt.'" (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569-1570.)

Here substantial evidence supported the juvenile court's decision not to place Daniel with Father. As the juvenile court noted, Father was unemployed and did not

have stable housing.[6]  Indeed, less than a week prior to the hearing, Father stated to DCFS that he needed to secure employment and stabilize his life before assuming custody of Daniel and, at the moment, Daniel was in the best placement he could possibly be with his PGP's.  Father's income consisted of a $20 weekly allowance from the PGF. In the two months after the DNA testing confirmed Daniel was his son, Father visited Daniel only three times.

Thus, the evidence supported the finding that placement of Daniel with Father would be detrimental to Daniel.

## DISPOSITION

The juvenile court's jurisdiction and disposition orders are affirmed.
NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

---

[6] According to Father's counsel, the PGP's were paying for Father's apartment.

11