Filed 5/6/16  In re C.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.H. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E064481 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1500504) |
| v. | OPINION |
| J.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Tamara L. Wagner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman, and Sophia H. Choi, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and appellant, J.H. (father), appeals from the juvenile court's disposition order removing his two children from the home, placing the children with a relative, and ordering family reunification services for both mother[1] and father. Father argues the juvenile court lacked substantial evidence that the children would be at risk if returned to his care. We affirm the juvenile court's orders.

## I

## FACTUAL AND PROCEDURAL HISTORY

Mother and father, who had been together for 10 years and married for four, had two children together, C.H., age nine and J.H., age eight (the children). Other than the instant case there is no evidence that either mother or father had any prior contacts with plaintiff and respondent, Riverside County Department of Public Social Services (the Department).

A Welfare and Institutions Code section 300 petition (the petition) was filed on May 18, 2015. The petition alleged the children came within the jurisdiction of the juvenile court. (Welf. & Inst. Code, § 300, subds. (b), (g).)[2] Specifically, under subdivision (b), the petition alleged that on or about May 14, 2015, law enforcement conducted a warrant search of the family home, which yielded over 100 marijuana plants, a butane honey oil lab, two unlocked assault rifles, two unlocked handguns, one of which was loaded, as well as a large amount of ammunition, all within reach of the children. Subsequently, mother was arrested for willful harm to a child, and father was arrested for cultivating marijuana,

---

[1] Mother is not a party to the appeal.

[2] Unlabeled statutory citations refer to the Welfare and Institutions Code.

2

manufacturing a controlled substance, and willful harm to a child.  It was also alleged that father abused controlled substances, as he smoked six to seven grams of marijuana per day, and provided care to the children while under the influence.

Under section 300, subdivision (g), the petition alleged that father was incarcerated, had an unknown release date and was unable to provide care and support to his children.

Father was released from custody on June 7, 2015.  A first amended petition (FAP) was filed on June 16, 2015.  The only change was the g-1 allegation was deleted; all other allegations remained the same.

As set forth in allegation b-1, the petition came about as a result of law enforcement conducting a warrant search of the family home and property.  The home was located on six acres of land.  During the search, law enforcement found all the items referenced in b-1 of the petition.  The detention report filed May 18, 2015 and the jurisdiction/disposition report filed June 15, 2015 further detailed the condition of the home and property.  Reportedly living in a shed on the property were two men, who were tending to the marijuana plants, and a shotgun was found in the shed.  Mother did not know these men lived in the shed.

There were wires strung up throughout the garage for drying marijuana; the children's toys and bicycles were also located in the garage.  In the basement were more wires strung with drying marijuana plants, and marijuana trimming tools were found, along with children's toys.

Inside the home was a strong smell of marijuana and over 50 mason jars filled with marijuana buds.  Father admitted growing marijuana and smoking six to seven grams of marijuana per day.  He was the primary daily caregiver for the children as mother worked

3

long days in Los Angeles as a home health nurse for Kaiser Permanente. Father denied the children were around when he smoked and denied they had access to the yard where the marijuana was kept. He admitted the guns were kept in a common area of the home, but denied they were loaded.

The children were mentally and emotionally stable, and they were current on medical and dental care. The children were well fed and had plenty of clothes. Both children were liked and doing well in school.

A. *Detention Hearing*

On May 19, 2015, the juvenile court found a prima facie showing that the children came within section 300, subdivisions (b) and (g). The children were removed from the home. The detention hearing was by way of report only, without any testimony or additional evidence being submitted. As of the detention hearing, father remained in custody. The juvenile court scheduled the contested jurisdictional/dispositional hearing for June 18, 2015.

B. *Jurisdictional Hearing*

The June 18, 2015 jurisdictional hearing was continued to July 2, 2015 and again to August 13, 2015. The only evidence submitted during the contested hearing was the May 18, 2015 detention report, the June 15, 2015 jurisdiction/disposition report, and the August 10, 2015 addendum report. Counsel for both mother and father submitted on the reports and argued the matter.

Father was not in custody at the time of the jurisdictional hearing. Upon his release from custody, father was provided with referrals for services and ordered to drug test. The

4

referrals included parenting education, substance abuse classes, and individual counseling.

The August 13, 2015 addendum report details father's drug testing results. Father tested negative on June 11, 2015. On July 1, father did not show for his drug test and had not called to cancel the appointment. Father submitted to the drug test on July 16 and the result was reported as diluted. Father did not show for a test on July 20, and the July 22 and July 30, 2015 drug testing reported negative results.

On August 5, 2015, the social worker contacted MFI Recovery to speak with father's counselor. The social worker was informed father had attended 12 out of 24 sessions. She had concerns regarding father's commitment level at the initial stage of his program, but things had changed and he was participating in services. The counselor reported that father tested twice at the program. The first test was positive for marijuana, however, after submittal to the lab the result was negative; the second test was also negative. Father's first parenting education session was on August 5, 2015.

The June 18, 2015 jurisdiction/disposition report included a reference that mother continued to deny having any knowledge of the situation that took place in the household regarding the marijuana. Initially, the parents did not actively engage in any services.

The b-1 and b-2 allegations in the FAP were found true by a preponderance of the evidence. A contested dispositional hearing was scheduled for September 10, 2015.

C. *Dispositional Hearing*

The dispositional hearing occurred on September 10, 2015. Though it was a contested hearing, the only evidence introduced were the jurisdiction/disposition report of June 15, 2015, and the August 10 and September 4, 2015 addendum reports. Again, counsel

5

for both mother and father submitted on the reports and argued to the court.

The reports of the social worker outlined the issues that led to the Department's involvement with the parents and the parents' progress in addressing the issues. The reports contained all the information that led to the finding at the jurisdictional hearing related to the b-1 allegation. There was no report providing an update regarding the status of the property and the drug paraphernalia found on the property. The focus of the argument of father's counsel both at the hearing and on appeal is the father's progress regarding the substance abuse b-2 allegation.

The September 10, 2015 addendum report noted that father submitted to a drug test on August 10, 2015 with a diluted result. On August 19, father was advised to drug test; however, he indicated he was not in the area and would not be able to test. On August 21, 2015, father submitted to a saliva test which was negative.

The father's counselor in his parenting class reported he was very active in the group. Father did not believe he had a substance abuse issue. On September 3, 2015, father indicated he had completed his substance abuse treatment program and submitted a certification of completion.

Father's parenting instructor spoke with the social worker and informed her father was not the "typical" client she was used to working with. He had acknowledged his role in the matter and how he placed his children at risk, and expressed that he would not do so again in the future. The therapist did not know if father would benefit from counseling because he was operating "with little to no issues."

As with the contested detention and jurisdictional hearings, the only evidence submitted were the social workers' reports. Based on the reports and argument, the juvenile court ordered the children removed from the custody of the parents and made findings pursuant to section 361, subdivision (c)(1) by clear and convincing evidence and ordered family reunification services.

## II

## DISCUSSION

Father's sole contention on appeal is that the juvenile court lacked substantial evidence that the children would be at risk if they were returned to his care. We disagree.

Under section 361, subdivision (c)(1), a dependent child may not be taken from the physical custody of the parents with whom the child resides at the time the petition was initiated unless the juvenile court finds by clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

"The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home. [Citations.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]' [Citation.] [¶] We review the court's dispositional findings for substantial evidence. [Citations.]" . . . ' " 'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily

7

a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citations.]" [Citation.] ' "Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' [Citation.]" [Citation.]' " (*In re J.S.* (2014) 228 Cal.App.4th 1483, 1492-1493.)

In the present case, the only evidence submitted at the detention, jurisdictional and dispositional hearings were the respective reports. Neither the social worker, the parents nor any other person testified at the hearing, and no other documents other than attachments to the reports were submitted.

The reports clearly describe the amount of marijuana, marijuana paraphernalia used for growing and harvesting, and the location of the weapons and ammunition on the property. Over 50 mason jars with marijuana were found inside the home.

There was marijuana accessible to the children on the property, in the garage where some of their toys were kept, and in the house. The basement floor was covered with marijuana particles. Further, the reports reference the materials used for operating a butane honey oil lab and describe the materials as highly explosive.

Regarding the guns, father admitted they were registered to him and his wife. He further admitted they were kept in a common area, but denied they were loaded or in an area where the children had access to them. However, the jurisdiction/disposition reports and the addendum reports suggest otherwise. There was no evidence submitted to

demonstrate that any weapons on the property now had been properly secured from the children.

The reports reference father's engagement in his case plan and the progress he made upon his release. However, there was no reference to the condition of the property that initially brought the police and the social workers to father's home.

The incident report attached as an exhibit to the jurisdiction/disposition report of June 18, 2015 lists 31 items that were removed from the property, including the cache of weapons and ammunition, and 134 pounds of marijuana found in the shed. However, there was no evidence nor argument submitted to the court suggesting the list comprised all indicia of the marijuana enterprise. There was no evidence offered informing the juvenile court the property had been cleared and remained clear of the items that created the safety risk for the children.

Counsel for respondent argued in closing: "I haven't heard any evidence as to what has changed on that property, other than the parents are still living together where they resided." "In fact, there was an operation in that household and on that property . . . and that operation was riskful for the children. It was accessible to the children. . . . The children had access to the garage and would go in there to get their toys. . . . [There were] not just guns . . . but [an] arsenal that was found on this property." The children had access to it all, including paraphernalia which could be associated with manufacturing and the operation of a laboratory. "This is beyond personal use marijuana . . . and what I haven't heard is that any of that has changed or been cleared out."

In response, father's attorney argued that "the situation is completely changed." Father accepted responsibility and acknowledged what he did was extremely dangerous. Father also did his best to fix his problems.

There is evidence father engaged in the services outlined in his case plan and made progress. His case plan included a requirement that he not grow marijuana at his residence. There is no evidence to suggest he is in compliance with this part of the plan, nor does he raise any issue on appeal that this component of his plan is unreasonable or unlawful.

Father cites to *In re Drake M.* (2012) 211 Cal.App.4th 754 in support of his argument that both the Department and the juvenile court confused the terms "substance use" and "substance abuse," arguing that the mere usage of drugs by a parent is not a sufficient basis to bring the minors within the jurisdiction of the dependency court. *In re Drake M.* involved the proof required for jurisdiction, while we are dealing with the court's order at disposition. However, even assuming *In re Drake M.* is applicable to this disposition issue, father's reliance on that case is misplaced.

The juvenile court in *In re Drake M.* found that the father's usage of medical marijuana placed the child at substantial risk of serious physical harm. The minor was nine months old, father admitted to smoking marijuana three times a week for his physical pain, and the social worker in *In re Drake M.* noted a poster of various types of marijuana on the wall, and beer in the refrigerator. The issue in *In re Drake M.* was one of use versus abuse. The appellate court in that case ruled there was insufficient evidence to support the juvenile court's finding of substance abuse, and reversed.

The instant case is not solely a substance use versus abuse case. The b-1 allegation

which was found true by the juvenile court relates to the risks associated with the parents' use of the property (i.e., more than 100 plants of marijuana, a butane honey oil lab, marijuana on the floor in the basement and garage where the children's bicycles and scooters were located, over 50 jars of marijuana buds on the floor in the house, and the weapons and ammunition found unsecured and accessible to the children).

As stated, each and every hearing went by way of report. Father had an opportunity to present evidence that the issues raised in the b-1 allegation had been corrected. He did not. In the absence of any evidence to the contrary, the juvenile court did not err in its dispositional orders. Our holding does not preclude father from submitting evidence at a later proceeding to show he is in compliance with all aspects of his case plan, including those concerning the condition of his property.

## III

## DISPOSITION

The orders appealed from are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

HOLLENHORST
Acting P. J.

MILLER
J.

11