Filed 10/29/15  In re A.D. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.D., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,     Plaintiff and Respondent,          v. B.D.,     Defendant and Appellant. | G051918 (Super. Ct. No. DP025658) O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Gary L. Moorhead, Judge.  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

Defendant B.D. (Mother) appeals from the juvenile court's disposition order terminating dependency proceedings and placing her now six-year-old son A.D. (Child) in the custody of M.D. (Father). Mother contends substantial evidence does not support the jurisdiction finding, which preceded the disposition order, and, as a result, we must reverse the jurisdiction finding and the disposition order. We disagree and affirm.

## FACTS AND PROCEDURAL HISTORY

*1. Detention and Petition*

About 10:30 p.m. on November 10, 2014, a police officer arrested Mother in a Newport Beach motel parking lot on a bench warrant. Then five-year-old Child was found alone in a motel room and he had no other caregiver at that time, so he was taken into protective custody.

On November 13, plaintiff Orange County Social Services Agency (SSA) filed a juvenile dependency petition under Welfare and Institutions Code section 300, subdivision (b)(1) (all further undesignated statutory references are to this code). The petition alleged Child had suffered, or there was a substantial risk he would suffer, serious physical harm or illness, as a result of Mother's failure or inability to supervise or protect him adequately, and by Mother's inability to provide regular care due to Mother's substance abuse. The petition alleged the following facts:

"b-1. On November 10, 2014, the mother . . . was arrested on a warrant. The child was in her care at the time. At the time of the mother's arrest, the mother did not make alternative arrangements for the care of the child. The mother was subsequently released on bail.

"b-2. The mother . . . has an unresolved problem with substance abuse. On November 12, 2014, the mother self-reported a past history of marijuana use, but denied other drug use. However, the mother was arrested on August 27, 2014, at which time she admitted current methamphetamine use by smoking and snorting. The mother also admitted the paraphernalia and methamphetamine found in a car belonged to her.

2

"b-3.  The mother . . . has a criminal history which includes, but may not be limited to, arrests and/or convictions for:  Health and Safety Code [section]11364.1 - possess unlawful paraphernalia; Health and Safety Code [section] 11377(A) - possess controlled substance [methamphetamine]; Vehicle Code [section] 14601.1(A) - drive while license is suspended; and Vehicle Code [section] 4462.1 - show on vehicle/gave officer unlawful registration.

"b-4.  For approximately the past year, the mother . . . has been transient and living in various motels.

"b-5.  On November 12, 2014, the child stated he did not want to return to the care of his mother as she has been mean to him.  Further, the child reported that the mother has struck him on his buttocks with a brush and a belt.

"b-6.  The father . . . resides out of state.  The father has not had visitation with this child since July 2013.  [The father] reported the mother turned off her telephone and he was unable to ascertain her whereabouts."

The court detained Child temporarily on November 14.  A few days later, following a contested detention hearing, the court detained Child permanently and released him to the care of Father, as recommended by SSA.

2.  *SSA Reports*

SSA social worker Melissa Martinez wrote four jurisdiction/disposition reports later entered into evidence at the jurisdiction hearing.  Based upon the results of her investigation, relevant portions of which are summarized below, Martinez ultimately recommended the court sustain the petition, declare dependency and authorize Child to remain in the care of Father, with supervised visitation for Mother.

On August 27, 2014, a police officer observed Mother driving her car in San Clemente.  The officer had several prior contacts with Mother and knew her driver's license was suspended.  The officer also knew there was an outstanding warrant for her arrest.  The officer contacted Mother when she stopped at a gas station.

3

The officer searched Mother's car and found methamphetamine and a methamphetamine pipe in her purse. Mother first denied but later admitted these things were hers. Mother also admitted she knew her license was suspended and there was a warrant for her arrest. The officer arrested Mother for possession of methamphetamine and driving on a suspended license.

Two days later, Mother pleaded guilty and the court ordered her to enroll and complete a drug treatment program pursuant to Penal Code section 1000 (PC 1000). The factual basis for her guilty plea states in part, "I willfully and unlawfully possessed a usable quantity of methamphetamine . . . ."

Mother enrolled in the PC 1000 drug treatment program as ordered on September 29, but the program terminated her on October 16 for failing to attend classes on October 1, October 8 and October 15. At the time of termination Mother had not completed any of the program requirements.

As a result, the court overseeing Mother's criminal case issued a bench warrant for her arrest. And, as noted above, on November 10, a police officer arrested Mother on the bench warrant. Mother's arrest left Child without a caregiver so the police officer took him into protective custody.

The next day SSA placed Child in a foster home. Child said he did not want to return to Mother. He claimed Mother had hit him on the buttocks with a hairbrush and a belt. At times Mother left him alone in motel rooms, including on November 10, when she was arrested in the motel parking lot.

Three days after the police took Child into protective custody; Mother told SSA social worker Maria Segovia a male friend had driven her and Child to the Newport Beach motel on November 10. While she was in the motel office paying for her room, Child was in the car. When Mother returned to the car, the police arrested her. The police asked Mother to contact someone to pick up Child, but she could not locate anyone at that time of night.

4

Mother denied she abused methamphetamine, and told Segovia she only used marijuana in the past due to back problems. She said she started using marijuana when she was about 16 years old, and had a medical marijuana license in 2012 and 2013. She claimed she last used marijuana about six months to a year ago.

Mother asserted the methamphetamine found in her car on August 27 belonged to a friend. Mother claimed she had attended two of her court ordered PC 1000 drug treatment classes, but there was a mix-up with her last name when she registered, which might explain why there was no record of her attending.

Mother also told Segovia that since December 2012 she had 100 percent physical custody of Child, and 50/50 percent legal custody with Father. Father lived in Massachusetts and had only contacted Child twice in 18 months. Father had not shown up for his visits and had not paid court-ordered child support.

A few days after the court detained Child, Mother told Martinez the allegation she did not make alternative child care arrangements on November 10 was "partially true." She said, "I was trying to make arrangements but my phone was dying; the police only gave me fifteen minutes." She claimed she had complied with all court orders, and the reason she was arrested was the name mix-up.

Mother also said the allegation she had an unresolved substance abuse problem was "partially true." She admitted the August 27 arrest, but stated she had not been using drugs and denied admitting the methamphetamine was hers. Mother said the police arrested her because the methamphetamine was in her car.

Mother admitted to Martinez that she used methamphetamine two years ago. Mother denied she ever used cocaine. Mother claimed she had been "drugged" with cocaine at age 18 by her twin brother, she had taken acid and Ecstasy in high school, and she had used marijuana when she was older and had a medical marijuana card. Mother also reported she had taken "Norco's" at times for various medical conditions but was not taking them at that time.

5

Mother told Martinez the allegation she had a criminal history was "partially true." She admitted her license had been suspended, but claimed she was not driving at the time of the August 27 arrest.

Mother denied the allegation she had been transient and living in motels for a year. She said she rented a room in San Juan Capistrano from May to November 2013, and in San Clemente from November 2013 until June 2014.

Mother also denied the allegation she had been mean to and physically abused Child. She admitted she once threatened to "whoop his ass," but denied hitting him. She had tossed a brush in his direction and it may have hit him. She said Child had a history of lying and saying what others wanted him to say.

Finally, Mother denied the allegation her whereabouts were unknown to Father and that she had turned her phone off. She had not changed her phone number and Father could always contact her on Facebook.

Martinez opined Mother had been dishonest about some of these things. Regarding the August 27 arrest, Mother told Martinez the drugs were not hers, but she admitted to the police and in the guilty plea the drugs were hers. Similarly, regarding the November 10 arrest, Mother told the police Child was alone in the motel room, but Mother told Segovia and Martinez that he was in the car.

At the time the police took Child into protective custody, Father was living in Boston and caring for his own father who had cancer. The next day Father told Segovia he had 50/50 custody and there was a family court hearing scheduled November 17. Father was trying to obtain custody, but had missed visits because Mother had been avoiding his phone calls and her whereabouts were unknown.

Father later told Martinez most of the allegations of the petition were true. Father added Mother attempted suicide with cocaine when she was 18 years old, and had four arrests for driving without a license. Father said the allegation Mother turned her phone off was partially true – she did not turn it off; she just never answered it.

6

Mother's own mother (Grandmother) said Mother lied a lot, was homeless and living in motels with Child for the past year, and was always yelling at Child to "shut up." Grandmother had seen Mother "smack" Child on the mouth and grab him forcefully, and Mother's behavior made Child nervous. Grandmother was happy the court placed Child with Father, and said Child now appeared very happy.

Mother had several contacts with the police besides the August 27 and November 10 arrests. A December 2014 Bureau of Criminal Identification and Investigation report showed multiple arrests for drug and drug paraphernalia possession, driving on a suspended license and other Vehicle Code violations.

Mother had another contact with police in San Clemente on July 26, 2014. According to the incident report, around 9:45 a.m. the police encountered Mother, a 17-year-old male, and Child in a car parked in the lot of an abandoned business. The police found methamphetamine, a used pipe and four Seroquel pills in the car. Mother admitted she had been smoking methamphetamine for over a year, including the previous night at a motel. She denied Child had been with her at the motel that night.

The police did not arrest Mother at the time of the July 26 incident. Instead, they released her pending further investigation and forensic analysis of the evidence. However, on February 19, 2015, the authorities charged Mother with child endangerment, possession of methamphetamine, possession of controlled substance paraphernalia, and possession of a controlled substance without prescription. The case was still pending at the time of the jurisdiction hearing.

SSA had also received a report of general neglect child abuse by Mother on March 24, 2014. According to the reporting party, about two weeks earlier, Mother was using methamphetamine in a house for about an hour while Child, then age four, waited alone in Mother's car outside. Mother also had been missing family court dates for fear the judge would know she was using drugs and remove Child from her care. SSA deemed this report inconclusive because Mother could not be located.

7

On November 21, 2014, Mother agreed to an SSA case plan including counseling, substance abuse testing, substance abuse outpatient treatment, Narcotics Anonymous (N/A) meetings, and parenting education. But a few weeks later Mother told Martinez she did not want agency-funded services.

Mother tested positive, via drug patch, for amphetamines or methamphetamines on December 2, December 9 and December 16, 2014, and on February 10, March 24 and April 14, 2015. She also tested negative on some dates during this time. Mother missed her patch test removal on February 24, 2015, so the patch could not be tested.

Mother continued to deny using drugs, claiming all her dirty test results were false positives. She blamed a diet pill, exposure in places like hotel rooms or hugging someone at an N/A meeting, or prescription pain medications with names she could not recall. But a forensic toxicologist opined false positive test results would not be caused by the diet pill or hugging, and the positive tests were most likely due to ingesting methamphetamine.

On January 29, 2015, Mother told Martinez she was seeing a counselor at church instead of the SSA referred therapists. Mother claimed she was attending Alcoholics Anonymous meetings and would provide proof. Mother said she had not attended any of the SSA recommended substance abuse treatment programs because she did not have a substance abuse problem.

Mother's face-to-face monitored visits with Child in November and December 2014 went well. Mother and Child also visited by Skype. Father reported their Skype calls generally went well too, except he occasionally had to remind Mother not to make promises to Child. In addition, Mother once told Child she would never call him again and hung up. Mother also seemed to get upset that Child had difficulty paying attention during the Skype calls. Child reported his Skype calls with Mother were going well, and said he missed her.

On March 20, 2015, Martinez met with Child and Father at their home in Boston. Martinez reported Child was well adjusted, well cared for, and happy in Father's care. Child said living with Father was awesome, he felt happy and safe, he wanted to remain with Father, and he did not want to return to Mother.

Child explained while he was living with Mother he was "trapped" in a car all day, and they lived in "hotels" not a home. Child added Mother would leave him alone in hotel rooms for long periods of time, while she went elsewhere in her car, and he was "scared." Child also recalled Mother had disciplined him by hitting him with a hairbrush approximately two times.

## 3. Jurisdiction Hearing

The court conducted a jurisdiction hearing on March 3, 2015. At the outset, the court stated it had considered the four SSA reports. The court then confirmed SSA was recommending the court sustain the petition; declare Child to be a dependent; authorize Child to remain in Father's care, with supervised visitation for Mother; and terminate the dependency proceedings with exit orders.

Next, the court granted Mother's request to bifurcate jurisdiction and disposition, and admitted the four SSA reports. Counsel for SSA and Child then rested, and Mother's counsel moved to dismiss the petition on the grounds SSA had not met its burden of proof, but the court denied the motion.

Mother took the witness stand and testified on her own behalf. Mother admitted she had been arrested on November 10, and Child had been in her care at that time. She explained she had tried to make arrangements for someone to care for Child but the police only allowed her 15 minutes and two phone calls, which, at that time of night made finding a caretaker an impossible task. She claimed several friends were going to come get Child, so Mother told all but one of them not to come, and then that friend was not able to get a ride.

9

Mother admitted she had used marijuana in the past, when she had a medical marijuana card, but stated she had not used marijuana in a year or two. She also admitted she used methamphetamine once nearly a year ago, cocaine once when she was 17, Ecstacy in high school, and acid (LSD) once, though she said she had been tricked into taking it. She had not used any drugs other than methamphetamine and marijuana since turning 18.

Mother acknowledged the August 27 arrest, but denied she was using methamphetamine at that time. She only pled guilty to methamphetamine possession to avoid a trial and more time in jail and because when she completed the PC 1000 program there would be nothing on her record. She denied ever using or being under the influence of drugs while Child was in her care.

Mother testified the police lied in their report regarding the August 27 arrest. The methamphetamine and pipe in her car were not hers, and she did not admit to using methamphetamine the previous night. The police also lied in their July 26 arrest report. She did not admit using methamphetamine, or that the methamphetamine or pills in her car were hers.

Mother was then living in Aliso Viejo. Before that she had rented a room in a home in San Juan Capistrano and, before that, she had rented a room in a home in San Clemente. Mother denied she had ever been transient and lived in hotels. She only stayed in motels when traveling.

Mother disciplined Child with time outs or by taking away toys. Mother never hit Child. Child lied about that. He never had any marks on his body. And she did not even own a belt.

According to Mother, Father had not visited Child since July 2013. Mother denied ever avoiding Father's calls. He could always contact her through their family wizard, mutual friends or Facebook. Mother never turned off her phone. Father chose to call only a few times.

10

*4. Jurisdiction Ruling*

At the conclusion of the jurisdiction hearing, the court amended the petition and found jurisdiction under section 300, subdivision (b)(1) (subdivision (b)(1)), based upon the following specific findings on the factual allegations.

The court found true the allegation that at the time of Mother's November 10 arrest, she did not make alternative arrangements for Child's care. The court stated: "It strains the court's credibility to believe . . . she made three telephonic contacts with friends to pick up her son . . . , that two of them indicated that they were available to come pick up the son and those two were called off when the third contact or friend indicated that she could do it and then couldn't get a car . . . . I just don't believe that the mother is credible in that regard . . . ." The court found Child's statements about these events were "probably credible," implying Mother's statements were not.

The court added and found true an allegation: "Mother was stopped and detained on July [26] 2014; that meth was found in the car while child was in the car; however police did not make an arrest and allowed mother to continue with the child." (Boldface & capitalization omitted.) And, while the court first stated the additional allegation alone, "[did] not present a serious enough risk to give rise to a jurisdiction finding," the court later stated, "there is jurisdiction based upon the findings that I have enumerated."

The court found not true the allegation Mother had an unresolved substance abuse problem. The court explained: "[W]hile the mother may have an issue with methamphetamine under the authority of *In re Drake* [(2012) 211 Cal.App.4th 754] cited by mother's counsel, I don't believe that there's proof that the methamphetamine use is substance abuse sufficient for the court to make a finding that the mother's substance abuse with methamphetamine puts her child at risk."

11

The court also found not true the allegation Mother's criminal history had caused a risk to the child. The court reasoned: "It is true but it's not sufficient for the court to find jurisdiction over the facts of this matter." The court next found not true the allegation Mother had been transient and living in motels for the last year. The court believed Mother had resided in San Juan Capistrano, then in her current home except for a few weeks.

Lastly, the court found not true the allegation Mother turned off her telephone and Father was unable to ascertain her whereabouts. The court did not believe Father had had no way to contact Mother.

## DISCUSSION

Mother contends the evidence was insufficient to support the court's jurisdiction finding under subdivision (b)(1). Specifically, she argues substantial evidence does not support any of the individual jurisdictional allegations found true by the court and, even when viewed in totality, these allegations do not support the jurisdiction finding. These arguments are not persuasive.

*1. General Principles and Standard of Review*

Subdivision (b)(1) provides any child who comes within any of the following descriptions is subject to the jurisdiction of the juvenile court and may be declared a dependent: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse."

"The statutory definition [subdivision (b)(1)] consists of three elements: (1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 (*Rocco M.*).)

12

Our review of the court's jurisdiction finding is constrained by familiar principles. "'In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.' [Citation.] "'If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed . . . .'" [Citations.]" (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 820.) In this context, substantial evidence means evidence that is "'reasonable, credible and of solid value—such that a reasonable trier of fact could find [the challenged findings]." (*In re Angelia P.* (1981) 28 Cal.3d 908, 924.)

*2. Sufficiency of Evidence*

The question is whether substantial evidence supports the finding that Child was, at the time of the jurisdiction hearing, a person described in subdivision (b)(1). There is ample evidence to satisfy the first two elements of the statutory definition as articulated in *Rocco* M.—neglectful conduct and causation. The July 26, August 27 and the November 10 incidents together demonstrate a pattern of neglectful conduct, resulting in Mother's failure or inability to adequately supervise or protect Child.

In the July 26 incident, Mother had Child in her car with drugs and drug paraphernalia, and she admitted she had been smoking methamphetamine for over a year, including the previous night at a motel. As the result of this incident, the authorities charged Mother with child endangerment, possession of methamphetamine and paraphernalia, and possession of a controlled substance without prescription.

In the August 27 incident, Mother again had drugs and drug paraphernalia in her car, and she admitted she knew her license was suspended and there was a warrant out for her arrest. As the result of this incident, the police arrested Mother for possession of methamphetamine, and driving on a suspended license.

13

In the November10 incident, Mother left Child alone in the motel room, the police arrested her on the bench warrant in the motel parking lot, and she did not make alternative arrangements for the care of Child. As the result of this incident, Child had no alternative caregiver, and the police had to take him into protective custody.

The issue remaining then is whether the evidence satisfies the third element of the statutory definition—namely, that Child had suffered, or there was a "substantial risk" Child would suffer, "serious physical harm or illness," because of Mother's pattern of neglectful conduct. (Subd. (b)(1); *Rocco M.*, *supra*, 1 Cal.App.4th at p. 820.) We conclude the evidence is sufficient on this element too.

Mother had 100 percent physical custody of Child and he depended upon her to supervise and protect him at all times. Mother's pattern of neglectful conduct constituted a substantial threat to her ability to adequately supervise and protect Child. At any time, the police could detain, arrest or incarcerate Mother for possession of drugs or drug paraphernalia, or for driving on a suspended license, or for having a warrant.

Regarding the July 26 incident, the fact the police did not initially arrest Mother is of no moment. They certainly could have arrested her that day and once more Child could have had no one immediately available to supervise or protect him. Further, the latter filed charges were still pending on the date of the jurisdiction hearing, and they still threatened to disrupt Mother's ability to adequately supervise and protect Child. What's more, Mother had drugs and drug paraphernalia in her car that day, and those things posed a substantial risk of serious physical harm or illness to Child.

Looking at the August 27 incident, the fact Child was not present when the police first detained and then arrested Mother is beside the point. Although the record does not reveal where Child was and whom he was with at the time, it is reasonable to infer Mother's detention and arrest actually disrupted her ability to adequately supervise and protect Child that day, again giving rise to a substantial risk of serious physical harm or illness to Child.

14

Finally, turning to the November 10 incident, Mother left Child in the hotel room alone, unsupervised and unprotected, for an unknown length of time. This was not the first time either. Child reported she had left him alone in hotel rooms for long periods before, sometimes until it got dark and he fell asleep, and he was scared. Additionally, on this day, the threat presented by Mother's pattern of neglectful conduct manifested in an arrest, which actually left her unable to adequately supervise and protect Child.

In sum, there is substantial evidence in the record Child was, at the time of the jurisdiction hearing, a person described in subdivision (b)(1). That evidence is reasonable, credible and of solid value; such that a reasonable trier of fact could conclude there was a substantial risk that Child would suffer, serious physical harm or illness; as a result of the failure or inability of Mother to adequately supervise or protect him. Consequently, we must affirm the jurisdiction finding.

In arguing for a different result, Mother does not seriously contest the sufficiency of the evidence to support the jurisdiction finding, when the jurisdiction allegations found true by the court are viewed as a whole. Instead, she argues the court improperly considered one of the jurisdiction allegations under subdivision (b)(1); and when the other jurisdiction allegations found true by the court are viewed individually, none of them is supported by substantial evidence. We will address each point in turn.

Mother first contends the court improperly considered the allegation that at the time of Mother's November 10 arrest, she did not make alternative arrangements for Child's care. She concedes this allegation is factually true. Even so, she argues it cannot be a basis for jurisdiction under subdivision (b)(1), because it can only be a basis for jurisdiction under section 300, subdivision (g) (subdivision (g)), which was not alleged in the petition. Mother also argues even if this allegation can be a basis for jurisdiction under subdivision (b)(1), it is not supported by substantial evidence since she was no longer incarcerated on the date of the jurisdiction hearing. Hence, Mother maintains we must reverse the true finding on this allegation.

15

It is true subdivision (g) provides in relevant part, a child is subject to the jurisdiction of the juvenile court if, "the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child[.]" And perhaps an allegation could have been made under subdivision (g) in this case. But Mother has not cited any authority which supports her claim the allegation in question can only be a basis for jurisdiction under subdivision (g), and not under subdivision (b)(1).

Besides, Mother misapprehends the gravamen of this allegation. The crux of the matter was not her brief incarceration, although it surely was a problem. The bigger problem created by this instance of Mother's neglectful conduct was the threat of incarceration without warning, and Mother's concomitant inability to adequately supervise and protect Child herself, or make alternative arrangements for his supervision and protection. So the court properly considered this allegation under subdivision (b)(1).

Mother next challenges the sufficiency of the evidence to support the allegation Child did not want to return to Mother's care because she had been mean to him, and had struck him on his buttocks with a brush and a belt. This allegation is not material to our conclusion substantial evidence supports the jurisdiction finding, so we need not discuss it at length.

Instead, we simply observe Mother bases many of her arguments on her own testimony that conflicts with Child's statements on these points. For example, she avers Child's statement Mother spanked him with a brush and belt is "physically impossible," since she denied spanking him and denied she owned a belt.

In essence, Mother asks us to reweigh the evidence or substitute our judgment for that of the court below. This we cannot do. Once more, all conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the findings, if possible. (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 820.) Viewing the evidence in light of these principles, the evidence was sufficient to support the court's true finding on the allegation Mother had been mean to Child and had struck him.

16

Mother also contends the evidence is insufficient to support the allegation concerning the July 26 incident. Again she concedes this allegation is factually true, but she focuses on the fact she was not arrested that day and instead was allowed to continue with Child. But she ignores the fact that, as the result of this incident, she was later charged with child endangerment, possession of methamphetamine and paraphernalia, and possession of a controlled substance without prescription, and those charges were still pending at the time of the jurisdiction hearing.

Mother asserts there is no evidence Child was at risk of harm on July 26, or in the future, due to Mother's neglectful conduct on July 26. She posits the police would have taken Child into protected custody if they perceived any risk of actual harm. Maybe. But there are other inferences which can be drawn and, since they are legitimate, we must indulge them to uphold the true finding on this allegation. Perhaps, as their report states, they released her pending further investigation and forensic analysis of the evidence, because they were not sure what the pills later determined to be Seroquel were.

Moreover, if there was no risk of harm to Child on July 26, then why did the authorities subsequently charge Mother with child endangerment for her conduct that day? It is reasonable to infer they charged her because the drugs and drug paraphernalia in her car posed a substantial risk of serious physical harm or illness to Child. At any rate, her conduct on July 26 was part of the pattern of neglectful conduct that posed a substantial risk of future harm; and facts that show the threat of future harm are "necessarily cumulative." (*In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470.)

For all of these reasons we conclude substantial evidence supports the court's finding Child was, at the time of the jurisdiction hearing, a person described in subdivision (b)(1). Furthermore, because we have rejected Mother's claim substantial evidence does not support the jurisdiction finding; and because her challenge to the subsequent disposition order rests exclusively on her claim substantial evidence does not support the jurisdiction finding; we need not discuss the disposition order at all.

17

## DISPOSITION

The jurisdiction finding and the disposition order are affirmed.


                                        THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.