Filed 2/26/16  In re C.M. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.B.,<br><br>        Defendant and Appellant. | B264826<br><br>(Los Angeles County Super. Ct. No. DK10932) |

APPEAL from an order of the Superior Court of Los Angeles County, Philip Soto, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tyson Nelson, Deputy County Counsel for Plaintiff and Respondent.

_____

Six-month-old C.M. was detained and placed in foster care following the arrests of C.B. (mother) and Nathan M. (father). Mother challenges the juvenile court's May 6, 2015 dispositional order removing C.M. from her physical custody.[1] We find no abuse of discretion, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.

## Detention

C.M., born in October 2014, is the child of mother and father. C.M. was detained on April 18, 2015, after mother and father were arrested for robbery and child endangerment. The detention report stated that father entered a liquor store on April 18 and placed two beer cans in his pocket. When store management approached him, he became verbally aggressive and walked out of the store to a car where mother and C.M. were waiting. Store employees followed father and hit the car with baseball bats. Mother and father then went back into the store, leaving six-month-old C.M. alone in the car. Mother threw some items from store shelves onto the floor, and then mother and father returned to the car and drove away. Police officers pursued the car and arrested mother and father. Following the arrest, officers found marijuana inside mother's car.

Subsequent to her arrest, mother told a children's social worker (CSW) that she and father were no longer romantically involved, but that she had been facilitating contact between father and C.M. She said father had been diagnosed with bipolar disorder, was homeless, and was verbally abusive to her. She said she had been driving father to a subway station when he asked her to stop at the liquor store, and she had not known he intended to shoplift. She admitted leaving C.M. alone in the car, stating, " 'I'm so sorry

---

[1]     Mother purported to appeal from both the jurisdictional and dispositional orders, but her appellate briefs do not challenge the juvenile court's exercise of jurisdiction over C.M. An appellant has the burden to demonstrate reversible error with reasoned argument and citation to authority; accordingly, because mother failed to challenge the court's exercise of jurisdiction with reasoned argument and citations to authority, we treat the point as forfeited. (E.g., *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.)

for getting mad, but I left the car and [C.M.] in it.  The next thing I knew I was throwing bread and stuff and he [father] was standing right next to me yelling at the clerks.' " Mother said she had lost her temper when her car was damaged.

The maternal grandmother told the CSW that she was disappointed with mother's decision-making when it came to father, but she believed C.M. was safe in mother's care. Maternal grandmother said mother and C.M. had been living with the maternal great-grandmother, but they had to move out after father pushed maternal great-grandmother. Since that incident, mother and C.M. had been living with grandmother.

The liquor store manager said father had stolen from the store three or four times in the past, and mother had been with him on at least one occasion.  He said both mother and father threatened to kill the store's staff.

## II.

## Petition

The Department of Children and Family Services (DCFS) filed a juvenile dependency petition on April 22, 2015.  As subsequently amended, it alleged that C.M. was within the jurisdiction of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivision (b), as follows:[2]

(b-1)  Father attempted to shoplift while C.M. was in father's and mother's custody.  Father fled, and store personnel hit father's vehicle with baseball bats while C.M. was in the vehicle.  Mother then left the vehicle, leaving C.M. unattended, to enter the store and vandalize merchandise.  Mother and father were arrested for robbery and child endangerment, and marijuana was found in the car.

(b-2)  Father has mental and emotional problems, including a diagnosis of bipolar disorder, which renders father incapable of providing C.M. with regular care and supervision.

---

[2]     All subsequent statutory references are to the Welfare and Institutions Code.

3

(b-3)  Mother and father have a history of domestic violence.  On March 13, 2015, in C.M.'s presence, father hit mother on her face with his fist, causing her to fall to the ground.  Mother then got up and hit father.

As a result of each of these incidents, mother and father were alleged to endanger C.M.'s physical health and safety, placing her at risk of harm.

### III.

### Jurisdiction and Disposition

The jurisdiction/disposition report, dated May 6, 2015, said the family had been reported to child welfare authorities in March 2015 following an incident at Children's Hospital.  A Children's Hospital security officer reported that on March 13, mother, father, and C.M. left the hospital.  After mother put C.M. in the car, father hit mother two or three times in the face, knocking her to the ground.  Mother got up and hit father.  Mother and father then got into the car and drove away.

Mother told the CSW that she and father had argued at Children's Hospital, but that father had not hit her.  She denied that she and father had a history of violence.  Mother also insisted that she had left C.M. alone in the car during the liquor store incident for only "ten seconds."  She admitted she had known father had marijuana with him, but said she did not know where it was.  She did not believe the marijuana was within C.M.'s reach because when the officers searched the car, "the baby was in the back seat and they found [the marijuana] in the glove compartment."

DCFS recommended that C.M. remain detained in foster care and that mother receive family reunification services, including domestic violence awareness classes, individual counseling, anger management classes, and on-demand drug testing.

At the May 6, 2015 jurisdiction/disposition hearing, mother admitted that she and father had a history of domestic violence.  She said she had denied such violence when interviewed by DCFS because "after the incident at the Children's Hospital, I no longer had ties with my baby's father.  And [in April ] when we did reunite, it was just in efforts to have him see his daughter. . . .  So after the incident at the Children's Hospital, there

4

was no more physical violence because I was not around him until the 17th."[3] Mother said there had been more than one, but fewer than five, incidents of violence. She said she and father had not dated since a big argument in mid-February, and "after that, it was no longer a relationship between me and him." She said the night she and father were arrested, she told him, " 'We are done,' and 'It's over.' " Mother said she had asked her attorney to get a restraining order against father.

At the conclusion of the testimony, mother's counsel requested that count (b)(1) be dismissed, and count (b)(3) be amended to reflect that mother was the victim of domestic violence. Counsel also requested that C.M. be released to mother. Attorneys for DCFS and C.M. requested that C.M. remain detained.

The court sustained counts (b)(1) and (b)(3) and dismissed count (b)(2). Pursuant to section 361, subdivision (c), the court found that C.M.'s continuing presence in mother's home "would create a substantial risk of detriment to the safety, protection, physical [and] emotional well-being of the child and there's no reasonable means to keep the child safe without removal." The court therefore ordered C.M. detained and placed with the maternal great-aunt.

Mother timely appealed.

## DISCUSSION

Mother's sole appellate contention is that the juvenile court abused its discretion by removing C.M. from her physical custody. For the reasons that follow, we disagree.

Pursuant to section 361, subdivision (c), a dependent child may not be taken from the physical custody of his or her parent unless the court finds clear and convincing evidence that there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and there are no reasonable means to protect the child's physical health without removal. (§ 361, subd. (c)(1).) The parent need not be dangerous and the minor need not have been

---

**3** There is some confusion in the record about whether the liquor store incident occurred on April 17 or 18, 2015. In any event, it appears that mother was referring to the liquor store incident.

actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. (*In re T.V.* (2013) 217 Cal.App.4th 126, 135-136 (*T.V.*).)

The jurisdictional findings are prima facie evidence that the minor cannot safely remain in the home. (§ 361, subd. (c)(1); *T.V.*, *supra*, 217 Cal.App.4th at p. 135.) In determining whether a child may safely remain at home, the juvenile court should consider the parent's past conduct and current circumstances, as well as whether there are any reasonable protective measures and services that can be provided to prevent the child's removal from the parent's custody. (*In re Cole C*. (2009) 174 Cal.App.4th 900, 910; § 361, subd. (c)(1).)

" 'At the dispositional hearing, the [dependency] court . . . has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion. [Citation.]' " (*In re Drake M*. (2012) 211 Cal.App.4th 754, 770.) When applying the deferential abuse of discretion standard, " 'the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*In re C.B.* (2010) 190 Cal.App.4th 102, 123.)

In the present case, substantial evidence supported the juvenile court's conclusion that C.M. could not safely be maintained in mother's custody. Mother admitted to a history of violence between herself and father, and there was evidence that mother and C.M. had been forced to change residences after father pushed the maternal great-grandmother, with whom they had been living. Notwithstanding this history of violence, mother permitted father to meet her at Children's Hospital in March 2015, where he again physically abused her by hitting her repeatedly in the head. Following this incident, mother did not seek help from the security officer who witnessed the incident—instead, she allowed father to get into the car and then sped away. Although we cannot determine from the record whether the blows to mother's head or the ongoing argument between mother and father impaired mother's driving, the juvenile court could reasonably

6

have concluded that mother's driving *was* impaired, and that such impairment put C.M. at risk of harm.

Mother again put C.M. at risk of physical harm in April 2015 when, with C.M. in her car, she drove father to a liquor store where he was arrested for shoplifting. Although mother said she did not know father intended to shoplift, the store owner said father had stolen from the store three or four times in the past, and mother had been with him on at least one occasion. The court therefore could reasonably have inferred that mother knew or suspected that father intended to shoplift. Such conduct put father at risk of arrest, and the family at risk of pursuit by law enforcement or others. Further, the juvenile court reasonably could infer that C.M. could have suffered serious physical harm as store employees chased father out of the store and began attacking mother's car—in which C.M. was secured in an infant seat—with baseball bats. In involving herself and C.M. in this incident, mother put C.M. in a dangerous situation that placed her at risk of harm.

Finally, mother exacerbated the risk of harm to C.M. when, following the attack on her car, mother exited the car, *leaving six-month-old C.M. unattended inside*. A six-month-old child cannot safely be left unattended in a car under any circumstances, and certainly not when the car is being hit by angry individuals wielding baseball bats. Mother then compounded the risk to C.M. by vandalizing store merchandise, threatening to kill the store owner, and then fleeing the scene, resulting in mother's arrest and C.M.'s detention.

The juvenile court could reasonably infer from these facts that mother's repeated exercise of poor judgment put C.M. at substantial risk of serious physical harm. Mother's contrary arguments are nothing more than requests that we reweigh the evidence or re-determine credibility. We cannot do so.

Similarly without merit is mother's contention that the trial court failed to consider alternatives to removal, such as release with supervision. Given mother's significant lapses in judgment, the juvenile court did not abuse its discretion by concluding that C.M. could not be adequately protected in mother's home.

## DISPOSITION

The dispositional order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

LAVIN, J.

JONES, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.